METROPOLITAN COAL COMPANY *vs.* E. F. BILLINGS, trustee.

E. F. BILLINGS, trustee, *vs.* METROPOLITAN COAL COMPANY.

Suffolk.    November 9, 1908. — June 22, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Contract*, Performance and breach.  *Strike.  Damages.*

Where by a contract in writing made on May 22, 1902, a coal dealer agreed to deliver before November 1 of that year an amount of coal sufficient to fill the bins in a certain building with furnace and stove coal to their full capacity, and the contract contained a condition that the seller should not be responsible for the delivery "if prevented by strikes or combinations of miners," and from the middle of May, 1902, until November 26, 1902, a strike of miners in the coal mines of Pennsylvania wholly interrupted the ordinary supplies of coal of the dealer, but he had on hand at all times during the period of the contract quantities of coal of the proper grades equal to or greater than the amounts called for by this contract and was equipped with teaming and transportation facilities sufficient for the delivery of such coal at the premises of the buyer, it was *held*, that the contract of the seller toward the buyer was performed in full, if during the strike the seller apportioned all his available supplies of coal among his regular customers and those persons with whom he had contracts when his contract with the buyer was made and gave to each his fair and proportionate share of the seller's available supplies, and if he delivered to the buyer during the period covered by the contract his fair and proportionate share of such supplies.

A so called strike clause in a contract for the delivery of certain coal during a period named, stipulating that the seller shall not be responsible for the delivery of the coal "if prevented by strikes or combinations of miners," relieves the seller from his obligation to deliver to the buyer during a strike of miners more than the buyer's due proportion of the supplies of coal which the seller has on hand or has reason to anticipate that he can obtain by the exercise of proper effort, but a strike during the period fixed for delivery has no effect to extend such period beyond the time limited by the contract.

By a contract in writing made on May 22, 1902, a coal dealer agreed to deliver before November 1 of that year an amount of coal sufficient to fill the bins in a certain building.  The contract contained a condition that the seller should not be responsible for the delivery "if prevented by strikes or combinations of miners."  From the middle of May, 1902, until November 26, 1902, a strike of miners in the coal mines of Pennsylvania wholly interrupted the ordinary supplies of coal of the dealer, but during the period covered by the contract he apportioned all his available supplies of coal among his regular customers and those persons with whom he had previous contracts and gave to each, including

the buyer under the contract in question, his fair and proportionate share of the seller's available supplies. On October 31, 1902, the seller notified the buyer that for all coal delivered after November 1, 1902, he should charge the buyer the market price. He did so, and, on the buyer refusing to pay such price, brought an action to recover it. *Held,* that, if, after receiving the notice from the plaintiff, the defendant ordered coal that was delivered after November 1, he was liable for the market price, although he intended that such coal should be treated as delivered under the contract, because the obligation of the plaintiff to deliver under the contract terminated on November 1, and he had performed his whole duty under the contract up to that time, the strike, which did not terminate until after the termination of the contract, having excused him from delivering to the defendant more than his proportional share of the plaintiff's coal on hand.

MORTON, J.   These are actions of contract and were tried and have been argued together. That by the coal company is to recover a balance alleged to be due for coal sold and delivered to the defendant. That by Billings is to recover damages for the alleged breach by the coal company of a written contract between him and it for the sale and delivery of coal by it to him. There was a verdict for the plaintiff in each case, though that for Billings was less than he claimed, and each case is here on exceptions by Billings to the admission of evidence, to the refusal of the presiding judge * to give certain rulings asked for, and to certain instructions that were given. We shall speak of the coal company as the plaintiff and of Billings as the defendant.

The contract was contained in two letters, — one from the plaintiff to the defendant dated May 10, 1902, offering, subject to certain terms and conditions relating to strikes, interruption of transportation,† etc., " to furnish the defendant's house at No. 409 Marlboro St., with such quantity of coal as can be

---

* *Wait,* J.

† The strike clause contained in the offer and accepted as a part of the contract was as follows:

" Terms and conditions for the sale and delivery of coal.
All contracts are subject to these terms.

" Every reasonable effort will be made for the prompt and faithful fulfilment of contracts, but the seller will not be responsible for the delivery of the same if prevented by strikes or combinations of miners, laborers or teamsters, or interruption of transportation or navigation, or from any cause or any occurrence beyond his control. In such cases the obligation to deliver coal under such contracts is thereby cancelled to an extent corresponding to the duration of such interruption, and no liability shall be incurred by the seller for damages resulting therefrom."

delivered previous to Nov. 1st next at the following prices," etc., and the other from the defendant to the plaintiff dated May 22, accepting the offer thus made and saying that the defendant would " take somewhere between 50 and 75 tons at 409 Marlboro St. before Nov. 1st," and concluding as follows : " The strike need not interfere with this as we shall not need more than 5 tons, and probably not that, until fall, but if at any time you wish to put in what our bins will hold, you may consider yourselves at liberty to do so." The terms of this letter were accepted by the plaintiff, and it was agreed between the parties at the trial that the words " such quantity of coal as can be delivered previous to Nov. 1st next" meant an amount of coal sufficient to fill the bins with furnace and stove coal to their full capacity, and such additional amount as was necessary to run the building until November 1.

The questions at issue arise out of the " strike clause " so called in the contract, and the rights and obligations of the parties in reference thereto.

1. At the trial it was admitted that at all times from May 22, 1902, to November 1, 1902, the Metropolitan Coal Company had in its possession in the city of Boston quantities of coal of the proper grades, equal to or greater than the amounts called for by its contract with Billings, and that at all times during that period it was fully equipped with teaming and transportation facilities sufficient for the transportation of such coal and its delivery at the premises of Billings.

The plaintiff offered evidence tending to show that from the middle of May, 1902, to November 26, 1902, because of strikes of miners at the coal mines in Pennsylvania from which its ordinary supplies of coal were obtained, its ordinary supplies of coal were wholly interrupted; that it did a business of about one million tons a year; that the requirements for its customers of the kind of coal called for by the contract during the time from May 22 to November 1 were about seventy-five thousand tons; that it had on hand and was able to obtain up to November 1 an amount of coal which was substantially thirty-one per cent of these requirements; that during those months in 1902 it apportioned all its available supplies of coal amongst its regular customers and those persons with whom it had contracts and gave

to each his fair and proportionate share of its available supplies; and that the defendant had received his fair and proportionate share thereof. On this state of facts the plaintiff contended that by virtue of the strike clause it was excused from further liability to the defendant. This testimony was admitted against the objection of the defendant and subject to his exception, and its admission raises the question of evidence presented by the bill of exceptions.

The defendant contended, and at the close of the evidence asked the judge to rule, that the strike did not operate to excuse the plaintiff for failure to deliver coal to the defendant which it was under obligation to deliver to him from May 22 to November 1, 1902, if it had in its possession at Boston quantities of coal of the proper grades equal to or greater than the amounts it was under obligation to deliver to the defendant, and was fully equipped with teaming and transportation facilities sufficient to enable it to make such delivery. The judge refused to rule as thus requested and instructed the jury in substance and effect that, according to the contract, deliveries were to be made by the plaintiff from time to time from May 22 to November 1, and that, in entering into the contract as they did, the parties must be understood to have contemplated that the plaintiff would continue to carry on its business in the usual and ordinary manner with due regard to existing contracts and the demands of its regular customers; that the plaintiff was bound to make every reasonable effort to fulfil its contract, but that if, by reason of the strike, it was unable to do so, and apportioned its existing supply, and such supply as it reasonably expected to be able to procure, amongst those who had contracts at the time when the contract between the plaintiff and defendant was entered into and its regular customers, and the defendant had received his due proportion, then the strike would operate as an excuse for the non-performance of its contract by the plaintiff notwithstanding it had on hand at all times between May 22 and November 1 sufficient coal of the required grades to fill the contract between it and the defendant if that alone were to be taken into account. The judge also instructed the jury that as against the defendant the plaintiff would have no right to sell to new customers, and that any inability to fulfil its contract resulting

from a desire to sell to others at higher prices or to relieve the necessities of others would not excuse the plaintiff from the obligation imposed on it by the contract. These instructions and the admission of the evidence which was objected to were well warranted by the decision in *Oakman* v. *Boyce*, 100 Mass. 477, which was followed by the judge in the trial of the case and in his charge to the jury. We see no reason to doubt the correctness of the rules there laid down. The case has recently been cited with approval by this court and similar rules have been applied elsewhere in like cases. See *Garfield & Proctor Coal Co.* v. *Pennsylvania Coal & Coke Co.* 199 Mass. 22, 41, 42, and cases cited. We do not regard the fact that the language of the contract in this case is "if prevented" and in the case of *Oakman* v. *Boyce* is "if prevented or obstructed" as sufficient on principle to distinguish that case from this. The object and effect of the contract in each case is to secure one of the contracting parties against liability to the other for damages for a breach resulting from causes beyond his control.

2. There was evidence tending to show that the plaintiff notified the defendant on October 31, 1902, that for all coal delivered after November 1, 1902, it would charge him the market prices, and that it did so, as set out in the declaration. The defendant, as there was also evidence tending to show, at all times objected to this, and at the trial contended and asked the judge to rule and instruct the jury that the obligation of the coal company to deliver the full amount of coal called for by the contract continued after November 1, and that for coal delivered after November 1 the plaintiff could only charge the contract price except for such as was in excess of the amount originally called for by the contract.

The judge refused, and we think rightly, to rule and instruct as thus requested. The strike continued, as already stated, till November 26, 1902. The contract expired on November 1. If coal that was delivered after November 1 was delivered and received as coal to which the plaintiff was entitled under the contract, then for such amount as was equal to that called for by the contract the plaintiff, as the jury must have understood from the charge, could only recover the contract price; but if, as the judge instructed the jury, the plaintiff gave the defendant notice

that the market price would be charged for coal delivered after November 1, and the defendant, after receiving such notice, ordered coal that was delivered after November 1, then he would be liable for the market price, notwithstanding he intended that such coal should be treated as delivered under the contract and that he should be only liable for the contract price. The obligation of the plaintiff to deliver under the contract terminated as already observed November 1. If it had delivered to the defendant his proportion of existing and available supplies, then it was excused by the strike from any further performance of the contract. If it had not delivered to the defendant his due proportion, then to the extent to which the defendant had been damaged by such failure it was liable and the defendant could recover, and the judge so instructed the jury. The case would stand differently, if, as in *Rowland* v. *Lehigh Coal & Navigation Co.* 28 Penn. St. 215, relied on by the defendant, the strike had terminated before the time limited in the contract expired and the plaintiff could, within the time limited, by the exercise of reasonable effort have obtained coal enough to fill its contracts with the defendant and others, and to supply its regular customers. The effect of the strike was not to extend the defendant's right to delivery beyond the time limited but, according to the proper construction of the contract, to relieve the plaintiff from the obligation which it would otherwise have been under, and to render it liable only for its failure to deliver to the defendant within the time limited his due proportion of such supplies as it had on hand and of such supplies as it had reason to anticipate it could obtain by the exercise of proper effort. It follows from what we have said that the instruction that was given at the plaintiff's request as to the measure of damages * if the defendant was entitled to recover in the second action, and to which the defendant also excepted was correct.

3. The judge instructed the jury that, if they found that the defendant was entitled to recover, the damages should be assessed

---

* The instruction referred to was as follows : "If the coal company did not deliver to Mr. Billings his fair proportion, you are to determine how many more tons should have been delivered to him at the contract price, and then substract the contract price of those tons from the market prices charged; that is to say, in order to determine what his damages actually were."

in the action brought by him against the plaintiff, and that they could not be allowed by way of recoupment in the action brought against him by the plaintiff.   The defendant now contends that this instruction was erroneous.   But no exception was taken to the instructions thus given.   The exceptions saved were to the instructions so far as inconsistent with the requests that were made, and no request was made or objection taken in regard to this matter.   No question as to the correctness of these instructions is, therefore, before us.

*Exceptions overruled.*

*R. B. Stone,* for the trustee.

*C. E. Hellier,* (*W. P. Everts* with him,) for the Metropolitan Coal Company.