CONSUMERS' BREAD CO. v. STAFFORD COUNTY FLOUR MILLS CO.

(Circuit Court of Appeals, Eighth Circuit. January 23, 1917.)

No. 4677.

1. SALES ☞62—CONSTRUCTION—ENTIRE CONTRACTS.
    A contract for the sale of 10,000 barrels of flour, 2,500 barrels to be shipped each month for a period of four months, is an entire contract; the provisions for delivery in installments not dividing it into separate contracts for each installment.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 171–179.]

2. SALES ☞89—CONSTRUCTION—DELIVERY IN INSTALLMENTS.
    A contract for the sale of 10,000 barrels of flour provided for the delivery of 2,500 barrels per month for the months of January, February, March, and April. Concessions as to time of delivery of installments were made by each party, neither party repudiating the contract until the seller after numerous promises defaulted in June. Thereupon the buyer after reasonable notice purchased other flour and sued to recover the difference in the price of the flour so bought and that which the seller contracted to deliver. Held that, the contract being entire, the mutual concessions did not abrogate it, and the seller was liable for its nondelivery within a reasonable time after notice, although it might have thereafter asserted the right to make delivery according to the specified monthly installments.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 251, 252, 259.]

3. SALES ☞89—MODIFICATION—TIME FOR PERFORMANCE.
    When no time is fixed for performance of a contract for the sale of goods, the goods are to be delivered within a reasonable time; and hence, where parties by mutual concessions have carried the time for delivery beyond that fixed in the contract, each party is entitled to a reasonable time for performance to be determined under the circumstances of the case.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 251, 252, 259.]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by the Consumers' Bread Company against the Stafford County Flour Mills Company. There was a judgment for defendant,

and plaintiff brings error. Reversed, with directions to grant a new trial.

John H. Atwood, of Kansas City, Mo., and Chester I. Long and Austin M. Cowan, both of Wichita, Kan., for plaintiff in error.

Frank L. Martin, Van M. Martin, and John M. Martin, all of Hutchinson, Kan., for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. On August 15, 1911, the parties to this action entered into a contract in writing by which the defendant, the Stafford County Flour Mills Company, agreed to sell and deliver to the plaintiff, the Consumers' Bread Company, 10,000 barrels of flour, at $4.25 a barrel, 2,500 barrels to be shipped in each of the four months of January, February, March, and April, 1912, with draft payable on sight to accompany bills of lading. Concessions as to time of delivery were made by each party to the other during and subsequent to the entire period covered by the contract, first at the request of the mills company, and then at that of the bread company. Neither treated the defaults of the other as abrogating any part of the contract. Down to June 1, 1912, only 3,425 barrels of flour had been delivered. The negotiations between the parties were carried on by correspondence which was put in evidence. It leaves no doubt as to the manner in which the parties themselves interpreted their contract, and the waiver of its provisions as to the time of performance. In May and June, however, the mills company began to indicate its inability to complete the delivery of the remaining part of the flour. It did not say that it would not deliver, but, in answer to the urgent requests of the bread company for shipments, wrote explaining that they had sent their rolls away to be reground, and added:

"We will do all we possibly can to hurry matters up. We will make shipment as soon as we possibly can, but cannot state exact date."

May 28th, in answer to a request for shipment, the Mills Company wired, "Will ship car flour to-morrow." May 29th it again wrote, in answer to a similar request:

"We are very sorry to not be able to ship as fast as we would like, but wheat has moved out faster than what we had any idea. Trusting that you will hold with us we will do the very best possible."

At no time did the mills company assert any right of forfeiture under the contract, or treat it as otherwise than in full force. They simply failed to perform. Finally, on June 15th, no further shipments having been made, the bread company purchased flour to supply the balance of the contract, and subsequently brought this action to recover the difference in price.

[1] The trial court disregarded the interpretation put upon the contract by the parties, and held each installment a distinct obligation, and time the essence of its performance, and, as the bread company failed to buy in the balance of each installment at the end of each month in

which it was to be delivered, it forfeited all right to damages. There was no conflict in the evidence. Both parties moved for a directed verdict. The trial court directed a verdict in favor of the defendant, and the plaintiff brings error.

The action of the trial court was wrong. Beyond question the contract was entire. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Cleveland Rolling Mills v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920; McDonald v. Kansas City Nut & Bolt Co., 149 Fed. 360, 79 C. C. A. 298, 8 L. R. A. (N. S.) 1110; Alpena Portland Cement Co. v. Backus, 156 Fed. 944, 84 C. C. A. 444.

"The provisions as to shipping in different months, and as to paying for each shipment upon its delivery, do not split up the contract into as many contracts as there shall be shipments or deliveries." 115 U. S. 203, 6 Sup. Ct. 14 [29 L. Ed. 366].

[2] Upon default by either party as to any installment, the other party might, if it saw fit, treat the contract as abandoned by the other party. Neither party, however, was obliged to do this. It was open to them to waive strict performance. That is especially true in regard to the matter of time. There is no element of a contract with which parties are so free to deal as the time of performance. Waiver of a breach as to that element will be more readily inferred than as to any other feature. Here correspondence between the parties leaves no room for doubt as to the waiver. Both parties treated the entire contract as in force. Each continued to express in unequivocal terms its desire and purpose to adhere to the performance of the balance of its terms. . Surely parties have the right to thus modify a contract as to the time of performance. It was only when the breach took the form that it did in June, of a total failure, that either party insisted upon its rights. The bread company then gave reasonable notice to the mills company that it required the shipment of the balance of the flour. Failure to meet that requirement was a breach of the contract, and authorized the bread company to do what it did, and it was clearly entitled to recover the difference between the contract price and the market price of the flour. A verdict should have been directed in its favor.

The questions involved in this case have not been much considered by American courts, but were directly presented to the Exchequer Chamber in England in Tyres v. Rosedale & Ferry Hill Iron Company, L. R. 10 Ex. 195. The facts and the law are briefly stated in the opinion by Chief Justice Cockburn as follows:

"There was a contract to purchase 2,000 tons of iron to be delivered in monthly installments. It did not suit the purchasers to take the iron in the installments originally contemplated by the parties, and they proposed to the sellers to postpone from time to time the delivery of the monthly installments. Now, it would have been perfectly competent to the defendants to say: 'We will not acquiesce in that proposal of yours. You are bound to take the iron month by month, and you must so take it, or consider the contract at an end.' Instead of doing that, the defendants, as I read the letters, acquiesced, not in holding the contract at an end, but in postponing the period of delivery. The iron was to be delivered in the course of the year 1871, and there was, by reason of this postponement, a very considerable arrear at the end of this

year. Then the plaintiffs call on the defendants to deliver at once the whole of what remained undelivered. I think that this was a demand which they were not entitled to make. I think that the postponement had the effect of carrying the period of delivery over the year 1872, but that the defendants could not be called upon to deliver 1,000 tons of iron at one time, but only in such quantities as was originally provided for. Therefore the defendants might have said, 'We shall not deliver the whole that remains in one mass, but we will deliver it according to the terms of the contract.' But they did not say this. What they said was, 'We will not deliver you anything at all.' There I think they were wrong. Consequently there was a breach of the contract, for which the defendants are liable in damages.

"The question of the damages might have been a matter of nice calculation, as to what was the damage in respect of each monthly installment of the period which still remained for delivery. But, fortunately, that question does not arise here, for the assessment of damages at the December market price is advantageous to the defendants, and not to the plaintiffs. I think the true effect of the correspondence is that there was merely a postponement of the period of delivery of the installments, the contract still remaining open, and both parties being bound by it. I think therefore that the judgment of the court below should be reversed."

This opinion is concurred in by Judge Blackburn. On the question as to whether the plaintiff could insist upon a delivery of the entire amount remaining undelivered in one installment, Judge Blackburn observes:

"Had they said, 'We want a reasonable time, and no more,' I should have been willing to construe the agreement in that way."

We construe the contract in the present case in the same manner. If the mills company had said, "We are willing to deliver the flour at the rate of 2,500 barrels per month until the balance is all delivered," we think they would have been entitled to thus distribute their performance. It should be observed that the case of Tyres v. Rosedale & Ferry Hill Iron Company presented facts which were more favorable to the defendants than the facts in the present case, for there delivery of the monthly installments had been delayed solely at the request of the plaintiffs. Then after the price of iron had greatly advanced the plaintiffs insisted upon delivery of what remained undelivered. As all the postponing had been done at plaintiffs' instance, it would seem at first that they were in no position to impose upon the defendants the hardship of performing after there had been a change in the price of iron. The court, however, rules that, inasmuch as the defendant had acquiesced in plaintiffs' request for postponement, that kept the contract alive, and the obligation to supply the iron in full force. Here the postponements were granted some at the request of the mills company and some at the request of the bread company, but much more at the request of the former than the latter. So the enforcement of the present contract after the advance in price is not as great a hardship as it was in the English case. The prevailing and dissenting opinions in the Tyres Case when it was before the lower court bring out the controlling considerations forcibly. L. R. 8 Ex. 305. See, also, Ogle v. Earl Vane, L. R. 2 Q. B. 275; Shaw's Braw Iron Co. v. Birch Grove Steel Co., 6 Times L. R. 50 (C. A. 1889); Wilson v. London & Globe Finance Corporation, 14 Times L. R. 15 (C. A.

1897); Ralli v. Rockmore (C. C.) 111 Fed. 874; Brown v. Sharkey, 93 Iowa, 157, 61 N. W. 364; Williston on Sales, p. 991; Sedgwick on Damages, § 737; Roberts v. Benjamin, 124 U. S. 64, 8 Sup. Ct. 393, 31 L. Ed. 334; McDermid v. Redpath, 39 Mich. 372.

[3] When no time is fixed for performance of a contract for the sale of goods, the law by implication fixes a reasonable time. What that will be depends upon the nature of the transaction. Sedgwick on Damages, § 737. The same principle ought to control when parties by mutual concessions have carried the time of performance beyond that fixed by the contract. The law would then allow to each party a reasonable time, depending upon the terms of the contract, and the other circumstances of the case.

We are convinced that the conclusions which we have reached are not only sound as a matter of law, but are in accord with the general practice of the business world. Concessions as between buyer and seller respecting the time of delivery are quite common in sales of articles like flour, coal, and iron, and in the practice of upright business men they do not impair any of the other obligations of the contract.

The case is reversed, with directions to grant a new trial.

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes