## CONSOLIDATION COAL CO. v. PENINSULAR PORTLAND CEMENT CO.

(Circuit Court of Appeals, Sixth Circuit.  May 3, 1921.)

No. 3429.

**1. Sales** ⬡=71(1)—**Parties held to have construed contract for coal to give buyer right to cumulate deficiencies in amounts ordered from month to month.**

Correspondence between the parties *held* to have given a contract for 60,000 tons of coal, to be shipped in monthly installments, a practical construction that plaintiff buyer had the right to cumulate deficiencies in the amounts ordered from month to month, so that, notwithstanding buyer's failure to order the full amount of the monthly installments dur-

ing the earlier months of the year, it had the right to have the undelivered remainder of the 60,000 tons delivered during the remaining months of the contract.

**2. Sales ⬥85(2)—Car shortages are "contingencies of transportation" and "causes beyond control" in coal contract.**

Car shortages were "contingencies of transportation," as well as "causes beyond the control" of defendant seller of coal, under a contract excusing delivery on such contingencies, and plaintiff buyer's contention that such exception applied only in case defendant could not get cars enough to make shipments it had agreed to make to plaintiff alone, irrespective of its obligations to other customers, was untenable, for, even in the absence of custom, it would be defendant's duty to apportion available cars among existing customers of coal, although evidence of such a custom would be admissible.

**3. Sales ⬥172—Seller's right to prorate shipments in case of car shortage depends on good faith.**

Under a contract for a year's coal supply to be shipped in monthly installments, defendant seller's right to prorate shipments in case of car shortage depended on its exercise of good faith and reasonable care to avoid taking contracts in such amount as it might reasonably expect would interfere with its securing sufficient cars to fill plaintiff buyer's contract, on the making of honest effort and the use of reasonable diligence to secure sufficient cars to fill the contract, and on its distribution of cars obtained so that plaintiff would get its fair share, and from the fact that defendant would normally be entitled to apportion its available cars on the basis of each day's contract requirements, it would not necessarily follow that plaintiff had no right to complain of the making of new contracts, where the market was rising and there was a car shortage.

**4. Appeal and error ⬥1170(9)—Sales ⬥418(1)—Instruction as to defense of car shortage in action for failure to deliver coal held reversible error.**

In buyer's action for damages for failure to deliver coal bought, one of the defenses being car shortage, where, following an instruction that, if defendant seller, for the purpose of getting a higher price for coal, used available cars to deliver spot coal to parties with whom it had no contracts when coal was due and not delivered to plaintiff, such practice would be unfair, the court instructed, "Plaintiff would be entitled to all cars so used until the contract amount then due had been delivered to plaintiff, * * * and not merely its proportionate share of them. Defendant cannot urge as a defense that parties with whom it had contracts were entitled to such cars unless they were so used by the defendant"— such latter instruction was error, as plaintiff was entitled to only its fair share of the cars so diverted, and was not entitled to damages for failure to receive cars which others should have received; and such instruction *held* prejudicial and reversible error, notwithstanding Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), as to technical errors.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by the Peninsular Portland Cement Company against the Consolidation Coal Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Sherwin A. Hill, of Detroit, Mich. (Warren, Cady, Ladd & Hill, of Detroit, Mich., J. Walter Lord, of Baltimore, Md., Justin R. Whiting, of Detroit, Mich., and Charles E. Lewis, of Escanaba, Mich., on the brief), for plaintiff in error.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James O. Murfin, of Detroit, Mich. (Herbert D. Mason, of Tulsa, Okl., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. On April 11, 1916, the Peninsular Portland Cement Company, of Jackson, Mich., contracted with the Consolidation Coal Company of Baltimore, Md., for the purchase of "55,000 to 60,000 tons of Consolidation Fairmont slack coal, less such amount as said Coal Company is unable to ship or Peninsular Portland Cement Company is unable to receive, on account of any strikes, accidents, contingencies of transportation or navigation, or causes beyond the control of either party affecting the shipment, delivery, or receipt of coal to be shipped under this contract," shipments to be made to the Cement Company, at Cement City, Mich., "in as nearly equal monthly installments as possible during the period beginning at once, 1916, and ending April 15, 1917, subject to above-mentioned contingencies. Failure to ship or receive coal on account of any of the above-named contingencies shall not require (or give option to) either party to ship or receive in subsequent months the amount of coal not shipped or received during the period of such contingency." The price of the coal was 75 cents per ton f. o. b. cars at the mines, payment to be made in cash "on the 15th of each month for the preceding month's shipments"; the terms of payment being made of the "essence of contract," and noncompliance therewith giving the seller the privilege of cancellation. During the remainder of April, 1916, and throughout the months of May, June, July, and August, shipments were made only as ordered by plaintiff, which in fact received all the coal it desired during those months, unless, perhaps, to the extent of one car in August. The aggregate amount actually shipped, however, lacked about 4,446 tons of a full 5,000 tons per month. In September, 1916, and thereafter, a substantial car shortage existed and coal prices advanced.

A controversy arose as to the amount of future deliveries, plaintiff claiming it was entitled to the entire undelivered remainder of the 60,-000 tons, viz. about 42,000 tons, to be ratably distributed during the remaining 7½ months of the contract period, viz. nearly 5,600 tons per month. Defendant, while admitting plaintiff's right to 5,000 tons per month during the remaining period (subject to defendant's asserted right to distribute available cars proportionately among all its customers), denied its obligation to make up the deficiencies accumulating during the first 4½ months, due solely to plaintiff's failure to order. Shipments were continued throughout the contract period, but in no month to the full amount of even 5,000 tons; the total shortage (including that accruing during the first 4½ months) being about 19,-492 tons. Plaintiff sued for its damages on account of this shortage. The ultimate issues upon the trial related to, first, plaintiff's right to cumulate the shortages for the first 4½ months; and, second, defendant's asserted right to prorate shipments according to car supply. The jury was instructed that it was defendant's duty from October 21, 1916, to ship to plaintiff the entire theretofore undelivered remainder

of the total 60,000 tons (in installments of nearly 5,600 tons per month), unless prevented by car shortage, as to which defendant was allowed relief, provided (1) it used good faith and reasonable care in the taking of contracts, so that it might reasonably expect to be able to secure sufficient cars to fill the contract here in question; (2) and made an honest effort and used reasonable diligence to secure sufficient cars to fill that contract; and (3) distributed the cars which it actually did get among its different customers, so that plaintiff received its fair share—the prescribed measure of damages being the difference between the contract price and the market price of the coal which should have been delivered, taken by months and at the market price on the last day of the respective months (less what the plaintiff could have saved by buying coal below the market), with interest at 5 per cent. from the last day of each month to the time of the trial, deducting from such aggregate $2,560.92, which admittedly plaintiff owed for coal actually delivered.[1] Plaintiff recovered verdict and judgment for $39,442.35. Defendant's motion for new trial was denied.

[1] 1. Except as the situation may be affected by the question of car shortage, it was not error, in our opinion, to instruct the jury, as matter of law, that plaintiff was entitled to the entire undelivered remainder of the 60,000 tons, distributed ratably throughout the remainder of the contract period. While the language of the contract suggests a degree of flexibility in shipments, dependent upon plaintiff's manufacturing requirements, and while we are not prepared to say that the original contract, standing alone, should be construed, as matter of law, to give plaintiff the right to cumulate deficiencies in the amounts ordered from month to month, although there are considerations strongly suggesting such construction,[2] in our opinion it at least cannot be said that the written agreement clearly and unambiguously denied such right, and we think the District Judge correctly held that the parties had themselves practically construed the contract as giving it to plaintiff. We so conclude for these reasons:

While in the beginning month of April, 1916, it was understood that shipments would be made to meet plaintiff's requirements, and the latter at first directed shipments on a basis of "4 cars per day, 24 cars per week" (a car was about 50 tons), four days later asking that shipments be reduced to 3 cars per day, "18 cars per week," because the "earlier order was more than necessary," yet, in reply to defendant's request to be advised of the approximate quantity of coal plaintiff would require, the latter wrote, on May 20th, that as near as it could estimate its requirements it would use *the full amount of the contract,* and that after approximately August 25th these requirements would be on a basis of 5 cars per day, which in fact would be about 6,000 tons per month, thus necessarily contemplating the making up of shortages. Two days later defendant replied that it was preparing to carry out plaintiff's ex-

[1] Plaintiff also claimed special damages for loss of profits, but this claim was rejected by the trial court and is not involved here.

[2] For example, shortages due to failure to order are not included in the express noncumulating provision respecting shortages due to contingencies of transportation, strikes, etc.

pectations, that it be taken care of for "the full amount of the contract"; and while defendant's suggestion of July 20th, that by reason of the shortage of labor and car supply plaintiff increase its order to 5,000 tons per month, was acted on by the latter, yet again, on August 21st, plaintiff wrote that it required 6,000 tons per month. True, defendant at once denied its obligation for more than 5,000 tons monthly, and when plaintiff repeated its insistence that the contract called for an undelivered balance of more than 45,000 tons to be delivered during the remaining 7½ months, and asking for shipments on that basis, defendant replied that "any shipments you have failed to take up to the present time is your loss. We were in position to and could have made immediate shipments, if you had given us instructions. Therefore * * * we will continue shipments to you on the basis of 5,000 tons per month until further advice"—yet, after plaintiff had continued its insistence for more than a month, defendant, on October 6th, expressing to plaintiff its regret over the misunderstanding, asked to be advised "what you want us to ship, so that I can see whether it will be possible or not." Six days later, plaintiff demanded the "full tonnage on this contract." Defendant then assured plaintiff of its desire "to do everything we can to make this contract satisfactory to you, and if you will advise me if this 5,000 tons per month is not satisfactory, and what you want, and how long you will run, we may be able to give it to you. I will surely make every endeavor to comply with what you want." Plaintiff, on October 19th, replied that it wanted "the maximum tonnage on the contract" to be delivered "in as nearly as possible equal monthly quantities from now until the expiration." Defendant acknowledged this letter with the statement, "Our understanding on this matter is the same."

We think defendant could not reasonably have failed to understand from the entire correspondence that plaintiff was demanding, and that defendant was assenting to the demand, that plaintiff be given this undelivered remainder of the 60,000 tons, distributed ratably during the remaining months of the contract period. This conclusion is confirmed by the fact that on March 10, 1917, on plaintiff advising defendant that there was still a balance unshipped on the contract of 22,423 tons as of March 1st, and calling attention to a discrepancy in the figures furnished by defendant, the latter, under date of March 15th, replied that, "In checking this over, I find we shipped you, up to March 1st, 38,036.55 tons, a shortage on what you have ordered shipped of 21,963.45. These shortages, as you understand, have been brought about by matters beyond our control, such as embargoes and coal car supply." It will be noted that the shortage figures above given are on the basis of a full 60,000 tons per year, and would seem consistent only with an accumulation of the shortages during the earlier period. The parties have thus construed the contract as entire, and have treated it as in full force. Except as the situation may be modified by car shortage, plaintiff was thus entitled to recover damages to the extent to which defendant failed to make deliveries. Consumers' Co. v. Stafford, etc., Co. (C. C. A. 8) 239 Fed. 693, 695, 152 C. C. A. 527.

We think defendant not entitled to complain that recovery was al-

lowed on a contract not pleaded. Early in the trial the court, and we think properly, interpreted plaintiff's proffered evidence as intended to establish a practical construction by the parties of the written contract admittedly made. Even had the court technically misinterpreted the intention and effect of the evidence offered, defendant could not well have been prejudiced by such misinterpretation, as even an amendment of the petition to embrace the alleged practical construction would have been within the limits of reasonable discretion.

[2] 2. The contract expressly excepts from the amount of coal to be shipped "such amount as said coal company is unable to ship * * * on account of * * * contingencies of transportation * * * or causes beyond the control of either party affecting shipment * * * of coal to be shipped under this contract." Car shortages are clearly "contingencies of transportation" as well as "causes beyond the control" of defendant affecting shipment. We cannot accept plaintiff's contention that this exception applies only in case defendant could not get cars enough to make shipments it had agreed to make to plaintiff alone, irrespective of its obligations to other customers. A somewhat similar contention was rejected by this court in Luhrig Coal Co. v. Jones & Adams Co., 141 Fed. 617, 621, 72 C. C. A. 311 (although in that case there was a prorating agreement). Similar holdings were made in McKeefrey v. Connellsville Co. (C. C. A. 3) 56 Fed. 212, 216, 5 C. C. A. 482, Metropolitan Co. v. Billings, 202 Mass. 457, 460, 89 N. E. 115, and Jessup v. Piper, 133 Fed. 108, 110—the latter in a charge by then District Judge McPherson, later Circuit Judge of the Third Circuit. Plaintiff, as a purchaser of coal in large amounts, can scarcely be presumed to have thought that its contract was the only one defendant had, especially as the amount plaintiff contracted for was only 1½ per cent. of defendant's total output for each of the three preceding years—in fact, the ratio was even less during the year here in question. The possibility of car shortage is universally recognized. The case therefore does not fall within the rule illustrated by Day v. United States, 245 U. S. 159, 161, 38 Sup. Ct. 57, 62 L. Ed. 219, that one who makes an unqualified undertaking to do a certain thing cannot avoid liability for nonperformance from the fact that performance is made impossible by the happening of an event which could or should have been known or reasonably anticipated, and so might have been (but was not) guarded against by contract. Defendant's contract of shipment was not unqualified. The event now relied upon as excusing performance pro tanto was anticipated and expressly guarded against. The general intention of the parties is plain enough. The specific question is: How is that general intention to be carried out, in the absence of express provision for prorating?

There was express testimony of the existence in the coal producing and shipping trade of a general custom, applicable to contracts such as we have here, to prorate shipments among the producer's various customers in case of car shortage. The trial judge struck out this evidence of custom, because of opinion that even in its absence it was defendant's duty to apportion cars available for the purpose among ex-

isting purchasers of coal. We think the evidence of custom was proper. Such custom formed the basis of the decisions in the McKeefrey and other Pennsylvania cases. Defendant did not except to this striking out, presumably because it was not hurt thereby. But we think there was no error in the trial court's construction of the contract in suit, regardless of custom. Such was the basis of the decisions in Metropolitan Coal Co. v. Billings, supra, and other Massachusetts cases which we cite in this opinion.

[3] Moreover, we are not impressed that error was committed in making defendant's right to prorate shipments depend broadly upon its exercise of good faith and reasonable care to avoid taking contracts in such amount as it might reasonably expect would interfere with its securing sufficient cars to fill plaintiff's contract, upon the making of honest effort and the use of reasonable diligence to secure sufficient cars to fill the contract, and upon its distribution of the cars which it actually did get among its different customers so that plaintiff should receive its fair share. Car distribution, in case of shortage, calls for good faith, diligence, prudence, and reasonable care in the respects mentioned. In McKeefrey v. Connellsville Co., supra, Metropolitan Co. v. Billings, supra, Jessup v. Piper, supra, and Garfield Coal Co. v. Penn Coal Co., 199 Mass. 22, 41, 84 N. E. 1020, these considerations were recognized as having proper existence, and such is the fair implication in Luhrig Coal Co. v. Jones & Adams Co., supra.

The trial court properly instructed that plaintiff would be entitled to damages if defendant failed to ship coal, not because of a shortage of cars, but because of plaintiff's refusal to pay an increased price. It was also proper to instruct generally that, unless defendant made an honest effort to put itself into position to deliver all the coal contracted for, the defense of car shortage should be disregarded, and plaintiff should be allowed damages sustained "because of such fault on the part of the defendant." It was also proper to instruct that if defendant, for the purpose of getting a higher price for coal, used available cars to deliver spot coal to parties with whom it had no contracts, when coal was due and not delivered to plaintiff, such action would be unfair to plaintiff. Testimony was presented and issues raised thereunder (including an asserted overcontracting by defendant), which made these instructions pertinent. Granted that defendant would normally be entitled to apportion its available cars on the basis of each day's contract requirements (Luhrig Co. v. Jones & Adams Co., supra; McKeefrey v. Connellsville Co., supra), it does not, however, follow that plaintiff had no right to complain of the making of new contracts under existing circumstances, including the existence of an actual car shortage. Oakman v. Boyce, 100 Mass. 477, 486.

[4] But, in our opinion, it was error to instruct (following the instruction relative to using available cars to deliver spot coal, for the purpose of getting a high price) that—

"Plaintiff would be entitled to *all cars so used* until the contract amount then due had been delivered to plaintiff. Bear in mind *I say all of them*, and not merely its proportionate share of them. Defendant cannot urge as a de-

fense that parties with whom it had contracts were entitled to such cars *unless they were so used by the defendant.*"[4]

In our opinion the rule so stated savors too much of penalty. Under the rule so given, not merely plaintiff, but every contract purchaser similarly situated, could visit like penalty upon defendant. We think it clearly an erroneous view that plaintiff was entitled to damages for failure to receive cars which others should have received. Upon this record this instruction may well have prejudiced defendant.[5] Again, while failure to exercise good faith, prudence, diligence, and reasonable care should forfeit relief to defendant to the extent that such failure has prejudiced plaintiff, we think that right to relief should not thereby be entirely forfeited, but should be lost only to the extent to which plaintiff has been thereby prejudiced. As said in Metropolitan Coal Co. v. Billings, supra, at page 462 of 202 Mass., and at page 117 of 89 N. E.:

"If it [plaintiff] had delivered to the defendant his proportion of existing and available supplies, then it was excused by the strike from any further performance of the contract. If it had not delivered to the defendant his due proportion, then to the extent to which the defendant had been damaged by such failure it was liable and the defendant could recover."

And see Jessup v. Piper, supra, 133 Fed. at page 111.

The charge contains some statements which suggest a contrary view. For example, the instruction that plaintiff should recover damages for breach of the contract unless there was finding in favor of defendant on all three points submitted, which included not only good faith and reasonable care in the taking of the contracts, honest effort, and reasonable diligence to secure sufficient cars to fill them, but (3) "the distribution of the cars which defendant actually got for its own use among its different customers so that this defendant [plaintiff?] received its fair share under the law as I have stated it to you."

Upon this record we see no merit in defendant's proposition that it was plaintiff's duty to furnish the cars for its coal shipments. The dealings of the parties, including their pleadings herein, have foreclosed that question. Producers' Coke Co. v. McKeefrey Iron Co. (C. C. A. 3) 267 Fed. 22, 28.

3. Plaintiff suggests that this case is one for the application of section 269 of the Judicial Code (as amended February 26, 1919, 40 Stat. c. 48, p. 1181 [Comp. St. Ann. Supp. 1919, § 1246]), which provides that on the hearing of "any * * * writ of error * * * in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties," which section in effect forbids any ef-

---

[4] All italics in this opinion ours.

[5] We think this point sufficiently saved. Although the exception to the charge itself was not very definite, viz: "to the charge in reference to prorating subsequent to October 21," yet there had been exception to refusal of defendant's requests which raised this very point, and error is assigned thereon.

fective presumption of prejudice from the mere existence of error when the appellate court is able to say from the record that it is not reasonable to infer that the substantial rights of the plaintiff in error have been injuriously affected. Horning v. District of Columbia, 254 U. S. 135, 139, 41 Sup. Ct. 53; Bain v. United States (C. C. A. 6) 262 Fed. 664, 669. We are not satisfied that the instant case falls within the section invoked. While the verdict is less than the amount shown by plaintiff's computation as recoverable in case of complete rejection of the defense of car shortage, the record furnishes no means of determining the precise basis upon which it was reached, nor to what extent the recovery may have been enhanced by the erroneous instructions to which we have called attention.

We have not attempted to discuss more than a small number of the errors assigned. Our views upon the questions not so discussed, should they arise upon a new trial, would seem sufficiently indicated by what is said generally in the opinion.

The judgment of the District Court is accordingly reversed, and the record remanded to that court, with instructions to award a new trial.