## BREVARD TANNIN CO. v. J. F. MOSSER CO. et al.

(Circuit Court of Appeals, Fourth Circuit. March 31, 1923.)

### No. 2078.

1. **Sales ⚌172—War conditions no defense for nondelivery under sale contract made during war.**

   In an action for breach of a contract made during wartime which made no exceptions for conditions as to performance because of war conditions, an instruction that war conditions and embargo by the government constituted no defense for failure to make delivery as specified by the contract was proper; and this is particularly true, where evidence disclosed the existence of the embargo for but a brief time, there being no real excuse for nonperformance.

2. **Sales ⚌181(11)—Requirement for monthly delivery of equal installments held waived.**

   In a suit for damages for nondelivery, evidence *held* to show that the contract requirement as to delivery of equal monthly installments was waived by both parties.

3. **Sales ⚌418(2)—Damages for breach of contract under which delivery was to be made by monthly installments held measured by price at time of final breach.**

   Where defendant had defaulted in its contract to deliver equal monthly installments of merchandise, and such requirement had been waived by plaintiff's acquiescence, the defendant had no right to insist that plaintiff's damages for breach should be measured by the market price in the months preceding a final breach of the contract, the market price of such merchandise having increased after the final breach.

4. **Sales ⚌418(7)—Seller held not entitled to benefit of buyer's purchases in open market.**

   In view of seller' refusal, on his default in monthly deliveries in equal installments as required by the contract, to permit the buyer to buy in the open market for his account, seller *held* not entitled to claim that certain quantities of the same merchandise purchased by the buyer in the open market were purchased for seller's account, where buyer had many other contracts for similar merchandise.

5. **Courts ⚌356—Trial ⚌273—Exceptions in federal courts cannot be taken after retirement of the jury; conformity provision of Revised Statutes not applicable.**

   The voluntary permission of the trial judge to counsel to take exceptions to the charge after the jury retires is improper practice in the federal courts, nor does the fact that the state practice countenances reserving exceptions after the retirement of the jury warrant such procedure in federal courts, as in this respect the procedure is not controlled by the conformity provisions of the Revised Statutes.

6. **Appeal and error ⚌272(2)—Exceptions taken after retirement of jury not considered on writ of error.**

   An exception taken after the jury retired cannot, under the federal practice, be considered on a writ of error, even where counsel are led into not taking exceptions while the jury is at the bar, either by stipulation, or by permission of the court, or by an invariable practice of the trial court, known and acted on by counsel.

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville; Edwin Y. Webb, Judge.

Suit at law by the J. F. Mosser Company and Wallace H. Pratt, receiver and trustee in bankruptcy, against the Brevard Tannin Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

⚌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Duff Merrick and Frank Carter, both of Asheville, N. C. (Carter, Shuford & Hartshorn, of Asheville, N. C., on the brief), for plaintiff in error.

Julius C. Martin and Thomas S. Rollins, both of Asheville, N. C. (Martin, Rollins & Wright, of Asheville, N. C., on the brief), for defendants in error.

Before TAFT, Circuit Justice, and WOODS and ROSE, Circuit Judges.

TAFT, Circuit Justice. This writ of error was sued out by the Brevard Tannin Company to reverse a judgment against it in the District Court in favor of the J. F. Mosser Company for $28,800 for damages for the breach of a contract for the sale and delivery of 50 tanks of chestnut wood extract of tannic acid. The jurisdiction existed because of the diverse citizenship of the parties; the plaintiff below being a corporation of Massachusetts doing business in Boston, and the defendant being a corporation of North Carolina doing business in the Western district of that state. We shall refer to the parties as they were in the court below.

The contract which was the basis of the suit was as follows:

"Record of Purchase.                                    No. 657.

"Boston, Mass., November 26, 1917.
"From Brevard Tannin Company, Pisgah Forest, N. C., and Bartonsville, Monroe County, Pa., for the J. F. Mosser Company, Boston, Mass.
"Quantity: Fifty (50) tanks, 80,000 pounds each, or 4,000,000 pounds.
"Merchandise: Pure chestnut wood extract.
"Stock to be in good merchantable condition, 25 per cent. basis tannin; B. D. Westendelfer's analysis to govern, settlement and to be paid by seller. One sample of each tank to be sent to buyer, one to destination of tank, and one to chemist, and four copies of each analysis to be furnished buyer.
"Shipment: Four (4) tanks per month during 1918, as per buyer's instructions.
"Marks: ———.
"Price 2⅛ cents per pound, f. o. b. Pisgah Forest, N. C., buyer's option to take stock in barrels at same price with cost of barrels to sell and cooperage added. Less 2 per cent. ten (10) days from date of shipment.
"Purchase No. 4.
"Order No. (for cabling). .
"Accepted: [Signed]   Brevard Tannin Co.,
"Geo. Adams, Pres.
"[Signed]   The J. F. Mosser Company,
"W. H. Ruhe, Vice President."

The parties had made a contract, December 8, 1916, substantially like the above, except that it was for 25 cars, instead of 50, the delivery was for two tanks a month, and there was in it this clause which did not appear in the contract sued on:

"Delivery subject to fires, strikes, car shortages, embargoes, floods, or other causes beyond the control of seller."

Under the earlier contract only 12 cars had been delivered during the year 1917, and it was contended by the plaintiff that the obligation to deliver the 13 cars continued and that the 18 cars delivered in 1918 must first be applied to satisfaction of this deficit, leaving only 5 cars

for application to the contract sued on, and a deficit of 45 cars. The court charged the jury that such an application could not be made by the plaintiff, unless it sustained the burden of proving that the parties had agreed to it. The jury on this issue, as the verdict showed, found for the defendant. We are therefore to consider this case here on the assumption that 18 tanks of the contract sued on were delivered, and 32 tanks of the 50 were not.

[1] Defendant in its answer interposed defenses that the performance had become impossible because of a government embargo and war conditions. The court charged the jury that those constituted no defense. The promise of the defendant was without exception or condition on this head. The contract was made during the war. The District Court was clearly right. Day v. United States, 245 U. S. 159, 161, 38 Sup. Ct. 57, 62 L. Ed. 219; Carnegie Steel Co. v. United States, 240 U. S. 156, 164, 36 Sup. Ct. 342, 60 L. Ed. 576; Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 543, 544, 23 Sup. Ct. 754, 47 L. Ed. 1171; Jacksonville Ry. Co. v. Hooper, 160 U. S. 514, 527, 16 Sup. Ct. 379, 40 L. Ed. 515; The Horriman, 9 Wall. 161, 172, 19 L. Ed. 629; Berg v. Erickson, 234 Fed. 817, 148 C. C. A. 415, L. R. A. 1917A, 648. Moreover, in this case, the evidence discloses only a few days interruption of delivery by government embargo and nothing which could in any view excuse performance.

The real controversy in this case was as to the measure of damages for the breach. The court fixed the date of the breach of the contract as of September 26th, because of a telegram from the defendant of that date to the plaintiff refusing delivery of any more cars. Neither side objected to this. The court then charged the jury that the measure of damages was the difference between the contract price of $2\frac{1}{8}$ cents a pound and the market price on that day. The jury found that market price to be $3\frac{1}{4}$ cents a pound, and returned a verdict for failure to deliver 32 tanks, containing 2,560,000 pounds, at the difference between the contract and market price of $1\frac{1}{2}$ cents a pound, or $28,800.

[2] Defendant contends that this was a contract for delivery by monthly installments of 4 cars and that the damages should be fixed upon the deficit each month at the market price each month. The evidence shows without question that defendant was in default to the extent of 3 cars or more at the end of every month. Whatever the proper rule in such a case, when each party stands upon its rights, it is enough to say that the correspondence and dealings between the parties here leave no doubt that the requirement as to delivery of equal monthly installments was waived on both sides. The plaintiff was pressing for deliveries and was complaining of delays while the defendant was excusing them, promising future compliance and complaining of the price. This was their attitude throughout until the breach. There was an interval when plaintiff proposed that, if it could induce its customers to abate something to it in price, it would abate double that amount to the defendant, but the negotiations failed. The plaintiff in its letters frequently called attention to the contract obligation of defendant, and threatened the possibility of its going into

the market to buy at the market price on account of the defendant; but it never did so until after the breach, unless the correspondence to which we are now to refer shows otherwise. On August 6th, plaintiff wrote defendant that it could not advance the price saying:

"We would like very much to help you out, but we are overdue in our contracts and when we bought this extract from you, and signed the contract, we expected to take it no matter what happened and we have fulfilled our part of the contract and expect you will conclude to do the same. Please do not put us in a position where we must go in the open market and buy this extract."

The plaintiff on the same day sent the following telegram:

"Have you made shipments on our contract last and this week. We have opportunity to buy twenty tanks extract. If you cannot make shipments one tank weekly will buy this for your account. We are compelled to fulfill our contracts. Please reply stating your position."

Defendant's answer to this telegram was:

"Have not shipped since Kenosha. Awaiting our Mr. Adams to see you. Will not allow buying on our account."

To this plaintiff replied as follows:

"Copy to Brevard.                                    Boston, August 10, 1918.

"Mr. George L. Adams, McMichaels, Monroe County, Pa.—Dear Sir: We have your telegram, received at 9:05 a. m., and will advise you as soon as the War Industries Board calls a meeting in Washington. We have a letter from Mr. E. J. Haley, stating that it will probably be late next week or early the week following.

"You are not making us any shipments on our contracts, and we shall be compelled to buy what extract is offered for your account. We have already bought 12 tanks at 2½ cents, less 1 per cent. ten days; three tanks at 2.90 cents net, and we are offered some more to-day at 3–3¼ cents. As written you, we cannot do anything but fulfill our contracts, and we certainly shall expect you to do the same. Better start shipping and give us one tank weekly. If you do this, we would arrange to use the extract we bought on other contracts. We are at a loss to know how you can write us such a letter as Mr. Decker wrote, demanding 2⅝ cents for extract you sold us at the contract price and agreed to deliver it.

"Will you please instruct the factory to start shipments, as to-day we have three telegrams from tanners who are working on government leather and to whom we sold this extract, demanding shipments, and the War Industries Board is pushing us hard. Please help us.

"Very truly yours,                                    The J. F. Mosser Co."

In subsequent letters, plaintiff continued to press for further shipments and threatened to buy against defendant's account. On September 23d plaintiff wrote defendant as follows:

"We wired you shipping order for one tank of extract to Richwood. This is to go ahead of other orders. We have not heard from you on our telegram and are anxiously awaiting your reply. We have confidence that you will start shipping and will make reply to our telegram and letter."

On September 25th, plaintiff sent a telegram and letter, in which it said:

"We to-day wired you that we would wait until to-morrow noon, after which time we would proceed to fulfill our contracts as best we can. This will be costly to you, and we hope you will reconsider the matter and start shipping on our contracts with you promptly.

"As written you in previous letters, we are getting into a lot of trouble through your not shipping this extract. We have now got to a point where we are going either to have the extract from you or start suit for damages. We would prefer not to get into legal complications, but we are prepared for anything after these demands and no extract being shipped."

Following this the defendant sent the telegram of September 25th, which the court held without objection to be a repudiation of the contract. On September 27th, October 3d, October 10th, and October 24th plaintiff asked for shipments, and continued to threaten that, unless they were resumed, it would buy on defendant's account. It appears from the evidence that defendant during the year had made and sold upwards of 240 tanks of the extract, and had sold many of them at a higher price than the contract price. It also appears that plaintiff had other contracts of purchase than this and many contracts of sale during the same period.

Defendant contends that the issue should have been left to the jury to decide whether the plaintiff had before the date of the breach bought tanks of the extract on account of the defendant, and whether damages should have been estimated on the basis of such purchases, if any. It relies on the letter of August 10th to show purchases and urges that, if damages for failure to deliver 12 tanks out of the 32 are figured at a difference between $2\frac{1}{8}$ cents, the contract price, and $2\frac{1}{2}$ cents, and for a failure to deliver three tanks at a difference between $2\frac{1}{8}$ cents and 2.90 cents, it would reduce the amount to be recovered in the suit by some $8,000. It points out that, although a special charge asked submitted this as an issue of fact to the jury in its measurement of the damages, the charge was refused.

[3] If the plaintiff did not make purchases and charge them to the account of defendant until the breach, there is no doubt that the court was right in holding and charging that the measure of damages was the difference between the contract and purchase price at the time of the breach. The provision for delivery by monthly installments of four tanks before September 26th had been clearly waived by the parties, and the deliveries of the tanks not delivered had been postponed by their acquiescence. The defendant has no right to insist that plaintiff's damages should be measured by the market prices in the preceding months, when with consent of the plaintiff it delayed deliveries. These principles are clearly established by the authorities. Consumers' Bread Co. v. Stafford County Flour Mills Co., 239 Fed. 693, 152 C. C. A. 527; Hosiery Co. v. Cotton Mills, 140 N. C. 452, 53 S. E. 140; Summers v. Hibbard, 153 Ill. 102, 38 N. E. 899, 46 Am. St. Rep. 872; Fyres v. Rosedale & Ferry Hill Iron Co., L. R. 10 Ex. 195; Roberts v. Benjamin, 124 U. S. 64, 8 Sup. Ct. 393, 31 L. Ed. 334. The market price of the extract increased from September 26th until the end of the year, so that the measure of damages for the whole 32 tanks at the market price on that day was more favorable to the defendant than if the calculation had been on the basis of monthly deliveries for the rest of the year. The facts thus make the decision of this court in Roller v. Leonard, 229 Fed. 607, 143 C. C. A. 629, inapplicable.

[4] Coming now to the contention that plaintiff in August actually

bought 15 tanks on account of the defendant before the breach at prices less than the market price on September 26th, and that plaintiff's recovery should be correspondingly reduced, we find no substantial evidence that these purchases were on account of the defendant. In his letter of August 10th, he presented no bill or claim for the excess of payments on those purchases over the contract price. He uses the future tense in respect to purchases contemplated on defendant's account. The past purchases he speaks of merely to show the increase in prices over the contract price and as a warning against defendant's withholding further shipments, and says that, if defendant will only start shipments at the rate of a tank a week, he will use the extract bought to satisfy other contracts. Until long after the date of the breach, as fixed by the court, he threatens to buy on defendant's account but never does. In view of the explicit refusal of the defendant to consent to such purchases on his account, and an absence of any other evidence than that stated to show an intention to charge the actual purchases to defendant's account, we think the defendant cannot complain of the court's direction to the jury to base its calculation of damages on the market price at the date of the breach.

This would lead to an affirmance of the judgment; but there is a question raised at the bar to which we think it our duty to refer. At the close of the charge, the record shows this:

"The court states that it is not necessary for counsel to note exceptions at this time before the jury retires, but that the court will allow counsel 10 days in which to file exceptions and assign errors."

The requests to charge and exceptions to their refusal were not filed while the jury was at the bar or indeed until after verdict, though each request is introduced with the statement that the defendant in apt time excepted to the giving or refusal of a special charge.

[5, 6] That the action of the judge in voluntarily giving to counsel permission to take exceptions to the charge after the jury retired was improper practice is established by a long line of federal authorities. Phelps v. Mayer, 15 How. 160, 14 L. Ed. 643; Barton v. Forsyth, 20 How. 532, 15 L. Ed. 1012; Pacific Express Co. v. Malin, 132 U. S. 531, 10 Sup. Ct. 166, 33 L. Ed. 450; St. Clair v. United States, 154 U. S. 134, 14 Sup. Ct. 1002, 38 L. Ed. 936; Lewis v. United States, 146 U. S. 370, 13 Sup. Ct. 136, 36 L. Ed. 1011. Nor does the fact that state practice, which the judge in the case before us seems to have followed, may justify reserving exceptions after the retirement of the jury, change the invariable rule in a federal court, either in a civil or a criminal case. The proper manner of reserving exceptions is part of the procedure in error in federal courts of review, and is not controlled by the conformity provision of the Revised Statutes. St. Clair v. United States, 154 U. S. 134, 153, 14 Sup. Ct. 1002, 38 L. Ed. 936, and cases cited. It has further been held that an exception taken after the jury retired cannot be considered on a writ of error under the federal practice, even if counsel are lulled into not taking exceptions while the jury is at the bar, either by stipulation, by the court's granting permission to them to do so, or by an invariable practice in the trial court, well known and acted upon by counsel. Johnson v. Garber, 73

Fed. 523, 19 C. C. A. 556; Western Union Tel. Co. v. Baker, 85 Fed. 690, 29 C. C. A. 392; Greene v. United States, 154 Fed. 401, 413, 85 C. C. A. 251; Star Co. v. Madden, 188 Fed. 910, 912, 110 C. C. A. 652; Arizona & New Mexico Ry. Co. v. Clark, 207 Fed. 817, 125 C. C. A. 305; Beatson Copper Co. v. Pedrin, 217 Fed. 43, 133 C. C. A. 29; Alverson v. Ry. & Navigation Co., 236 Fed. 331, 334, 149 C. C. A. 463.

In the face of this formidable array of authority from the Second, Fifth, Sixth, and Ninth Circuit Courts of Appeals, we should be inclined to hold that the exceptions in this record were not duly reserved and are not properly before us. To avoid the conclusion that counsel were misled to their prejudice by the voluntary invitation of the court, however, we have deemed it proper to show that the exceptions, even if seasonably reserved, could not be sustained.

The judgment of the District Court is affirmed.