## Screw Machine Products Corporation *vs.* Cutter & Wood Supply Co.

### JULY 3, 1922.

Present: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Principal and Agent. Contracts.*

Where X. was in charge of a branch store of a company, and for several months had sold goods to plaintiff, although in much smaller amounts than the order in question, but sometimes in excess of the stock carried in the local store, and a large order from plaintiff was accepted by him, and thereafter plaintiff wrote defendant demanding compliance with the conditions of the order, and at no time prior to the trial did defendant suggest that X. had no authority to bind it, or that a contract had not been entered into, and a portion of the order was actually delivered.—

*Held,* that it was a question for the jury whether or not a contract was entered into between the parties.

*(2) Principal and Agent. Contracts. Estoppel.*

Where one knows that another, believing that former's agent had authority entered into an agreement with the agent and was relying upon the agreement and remains silent as to the lack of authority in the agent, he is bound by his own conduct in remaining silent.

*(3) Contracts. Evidence.*

In an action for breach of contract where plaintiff relied upon the apparent authority of the agent of defendant, question asked agent by defendant as to whether or not he had authority to accept orders in as large quantities as the order given, was properly ruled out, for if the principal gave the agent any secret instructions such instructions were not brought to the attention of the plaintiff and were not binding upon him.

*(4) Contracts. Extension of Times. Measure of Damages.*

Where a seller is unable to make delivery when performance is due and by mutual consent or by election of buyer to continue the contract, the time for delivery is extended, damages are to be calculated as of the time fixed by the later agreement.

ASSUMPSIT. Heard on exceptions of defendant and overruled.

RATHBUN, J. This is an action in assumpsit. The declaration alleges that the parties entered into a contract whereby the plaintiff agreed to buy and the defendant agreed to sell a certain number of drills; that the defendant broke the contract by refusing to make delivery in accordance with the terms of the contract. The trial in the Superior Court resulted in a verdict for the plaintiff for $2,895.32. The case is before us on the defendant's exceptions, as follows: to the refusal of the trial court to direct a verdict for the defendant; to the admission and exclusion of testimony; to the refusal to strike out certain testimony; to certain instructions to the jury; to the refusal to instruct as requested, and to the refusal of said court to grant the defendant a new trial.

The defendant was a dealer in tools and mill supplies, with the main store and office located in the city of Boston and a branch store located in the city of Providence. The business was both wholesale and retail. Only a small stock was carried in the Providence store. On September 27, 1915, Mr. Barnett, manager of the Providence store, obtained from the plaintiff an order or orders for 334 dozen right hand and 334 dozen left hand high speed twist drills at the price of 62½ per cent off the catalogue price. Mr. Barnett attempted to obtain the order for 60 per cent off but plaintiff refused to agree to pay more than the catalogue price less 62½ per cent.

The plaintiff contends that Barnett at the time he obtained said order agreed to fill the order by delivering at once such portions of the order as the defendant had in stock and the balance as soon as it could be obtained from the manufacturer, the Cleveland Twist Drill Co., and not later than two months. The defendant contends that Barnett accepted the order with the understanding that he would fill the order provided he could obtain the drills for the

plaintiff at the catalogue price less 62½ per cent. The defendant also contends that its agent had no authority, either express or implied, to bind the defendant by entering into a contract to sell such a large number of high speed drills.

After conferring with his principal Mr. Barnett, on October 12, 1915, in a conversation by telephone, told the plaintiff's purchasing agent that the defendant could not fill the order at the catalogue price less 62½ per cent. On the following day the plaintiff replied by letter, as follows:

"October 13, 1915.

Cutter and Wood Supply Co.
131 Washington Street,
Providence, R. I.

Attention Mr. Barnett Re-Manager.

Gentlemen:

Confirming the conversation between yourself and the writer yesterday, we expect you to fill our orders No. 12730, 12731, 12732, 12733, 12735, and 12736 for right hand straight shank Cleveland Twist Drills at a discount of 62½ per cent from the regular Cleveland Twist Drill price list. These orders were given you at your request in the presence of Mr. Swan of the Cleveland Twist Drill Company, Mr. McDermott and the writer of this company, at a discount of 62½ per cent and from a strictly business stand point it is up to you to fill the orders at your own discount, viz., 62½ per cent.

It seems very strange to us that fifteen days after this order has been in your hands that you should come to us and tell us that you cannot accept the order at the price at which you took it. Had you advised us at once that you were not in a position to fill the order at a discount of 62½ per cent we could have purchased from another concern without loss of money to us, but now it is too late for us to place the order with your competitors without paying them a higher price than

would have been the case when the order was first placed with you, and you at the time you took this order, were aware of the fact that we could place the business with your competitor without paying him a higher price than he had been receiving for the past year or so.

As stated to you yesterday, we do not like to see anybody accept our orders and take them at losing basis, but looking at the proposition from any angle that you choose, we believe that you will be confronted with the fact that you are bound to fill the order, particularly under the existing circumstances, at the price which you took it.

Yours very truly,

THE SCREW MACHINE PRODUCTS CORP.

Leo P. Burgess, Purchasing Dept."

The price of drills advanced soon after said order was taken and continued to advance very materially for a period of several months, during which time the defendant made deliveries of drills on said order at the catalogue price less $62\frac{1}{2}$ per cent. All left hand drills specified in the order were delivered but the defendant failed to deliver a large portion of the right hand drills specified in the order and for this failure the plaintiff is seeking damage.

The 21st exception is to the refusal of the trial court to direct a verdict for the defendant. The defendant argues that there was no evidence that Barnett had authority, either express or implied, to agree on behalf of his principal to fill the order in question and that there was no evidence that such agreement if made was ratified by the principal. Whether Barnett agreed to fill said order was clearly a question of fact for the jury and while there was no proof of actual authority we cannot say that there was no evidence that he had apparent authority to make such agreement. He was in charge of a branch store. For several months he

had sold goods to the plaintiff. While the individual and total orders of the plaintiff for high speed drills were small compared with the order in question, Barnett did fill orders for the plaintiff for carbon steel drills in quantities apparently in excess of the stock carried in the local store. It is possible that Barnett conferred with his principal before filling or agreeing to fill orders in excess of stock which he carried in the store but if he did such facts were not brought to the attention of the plaintiff. Furthermore we can not say that the jury were not warranted in inferring that the principal by its conduct ratified the agreement of its agent. On December 24, 1915, the plaintiff wrote to the defendant, saying, "unless we receive without further delay substantial shipment against the above mentioned order, it will be necessary for us to purchase these orders on the open market and to charge you the difference between the price which we will be compelled to pay and the price at which you took these orders." May 16, 1916, the plaintiff wrote to the defendant saying, "If we have not heard from you regarding this matter by Friday, June 2d, we will take other steps to secure a satisfactory settlement of this order." Plaintiff wrote to the defendant several other letters of similar purport. On July 31st the plaintiff by letter gave defendant notice that unless delivery of the balance of the order for the right hand drills should be completed at once the plaintiff would secure the drills from other dealers and charge the defendant with the excess in price. On September 23, 1916, the plaintiff by letter gave notice to the defendant that no more deliveries would be received and that the plaintiff would hold the defendant liable for damages resulting from breach of the contract. Most, if not all, of the numerous letters from plaintiff to defendant concerning the subject now in dispute were addressed to the Providence store. On October 12, 1915, Barnett, in a conversation by telephone, did tell the plaintiff that the defendant could not fill the order at the price stated but neither the principal nor the agent at any time before the trial suggested to the plaintiff that

Barnett had no authority to bind his principal or that a contract for a sale of the drills in question had not been entered into by the parties.

It was argued that the delivery of drills from time to time on said order at the price specified in the order was consistent with an undertaking to fill the order to the extent of the defendant's ability and that the delivery of drills on said order at a loss when they might have been readily sold at a substantial profit was done for the sole purpose of accommodating a customer. We think that such conduct is more consistent with a knowledge that the agent had entered into a contract to fill said order. If knowledge came to the principal that the agent had exceeded his authority and the principal was unwilling to be bound by the act of the agent it was the duty of the principal to promptly bring the facts to attention of the plaintiff. If the defendant (2) knew that the plaintiff, believing that the defendant's agent had authority, entered into an agreement with said agent and the defendant knew that the plaintiff was relying upon said agreement and the defendant remained silent as to the lack of authority in the agent, the defendant is bound by his own conduct in remaining silent. It is a familiar maxim that he who refuses to speak when he should will not be permitted to speak when he would.

A description of the drills ordered was, by reference to catalogue numbers, typewritten on the plaintiff's regular order sheets which contained in the margin printed instructions under various headings. Under "DELIVERY" is the following: "Unless delivery be made within one day of date of order, we must have written acceptance by return mail stating delivery and actual shipping date. *As soon as possible* and *promptly* are not dates. Material must be delivered within time agreed, otherwise we reserve right to cancel." The defendant argues that the first sentence of the language above quoted conclusively shows that an order, to be accepted only in writing, was given and that no contract was made. The plaintiff's testimony is to the

effect that this typewritten description of drills was not an order but was a memorandum and was not made until after the terms of the contract for the purchase and sale of the 334 dozen right hand and the 334 dozen left hand drills was completed. There was no attempt to vary, by parol testimony, the terms of a written contract for no one contends that these several sheets of paper were written contracts. Under "PRICE" is printed the following: "This order must not be filled at a higher price than noted on order nor at a higher price than last charged or quoted. When price is 'delivered our factory,' prepay freight." We find no price "noted" on any of these sheets but the parties agree that the price was to be the catalogue price less 62½%. To one having this information the language last quoted might indicate that the typewritten sheets were not orders to be accepted. As we have above stated it was a question for the jury on all of the evidence whether the parties contracted. Exceptions 4, 5, 21, 27, 30, 32 and 33 are each overruled. Exceptions 1, 2 and 3 were to the admission of testimony relative to left hand drills. The defendant contends that the sale of left hand drills was a separate transaction and that the testimony concerning the sale and delivery of left hand drills tended to confuse the issue. There was testimony to the effect that the agreement for the sale of left hand and right hand drills was not separable but was an entire contract. The testimony objected to was admissible as it tended to show that the defendant recognized the existence of a contract between the parties for the delivery of right hand as well as left hand drills.

The 18th exception was to the admission of the defendant's invoice of drills to the plaintiff on May 12, 1916, at a price higher than the contract price. We find no merit in this exception.

The 17th exception is to the refusal of the trial court to strike out testimony. On cross-examination said Barnett, a witness called by the defendant, was asked the question,

"Didn't you at that time request Mr. Briggs to release you from delivering the balance of those drills?" The purpose of the question evidently was to show that the witness made no contention that a contract did not exist between the parties. The witness answered "No," and then added, "I may have asked Mr. Briggs to state some offer to avoid trouble. We were very anxious to avoid trouble and expense of going to law and willing to do anything in reason, almost, to avoid that." The defendant took exception to the refusal of the court to strike out all of the answer following the word, "No." The language contained an implied denial of liability and was a voluntary statement by witness called by defendant. Under the circumstances we do not consider the ruling of the court refusing to strike out said language reversible error.

The 15th exception is to the refusal to permit Barnett to answer the following question: "Now, did you or did you not have authority from your principal in Boston to accept orders for any quantity as large as that?" The plaintiff (3) relied upon Barnett's apparent authority. If the principal gave the agent Barnett any secret instructions such instructions were not brought to the attention of the plaintiff and were not binding on the plaintiff. The refusal to permit the question to be answered was not error.

The 19th exception was to the exclusion of similar testimony and is also overruled.

The 35th exception is to the refusal of the trial court to grant a new trial. In considering the exception to the refusal to direct a verdict for the defendant we have discussed the defendant's contention that no valid contract was entered into by the parties. The defendant further suggests that the damages awarded are excessive for the reason that, as he contends, if a contract existed between the parties it was broken on October 12, 1915, when Barnett told the plaintiff that the defendant could not fill the order at the price stated and was also broken when deliveries were not completed at the expiration of two months from

the date when the order was obtained and that in computing the damages the market price of drills on one of these two dates should have been considered rather than the much higher price of August or September, 1916.

The defendant excepted to the admission of testimony as to the market value of drills after December, 1915. Defendant at no time repudiated the contract and we think that the testimony warrants a finding that the time for making delivery was from time to time, at the request of the defendant, extended. The plaintiff was not bound to give any extension and it might have brought suit instead of granting further time. If the time for delivery was extended at the request of the defendant it ought not to complain because the plaintiff granted the request instead of treating the contract as broken and buying in the market at that time. The rule for assesing damages in a case of this nature is stated in Williston on Contracts, Sec. 1383, as follows: "Sometimes when the seller is unable to fulfill his obligation at the time when performance was due, by mutual consent or by the election of the buyer to continue the contract in spite of the seller's default, the time for delivery is extended. The damages are then to be calculated as of the time fixed by the later agreement."

In *Ogle* v. *Vane*, L. R. 2 Q. B. 275, the defendant agreed to deliver 500 tons of iron to the plaintiff by the end of July and none had been delivered at said date and at the request of defendant plaintiff waited until February of the following year. Defendant failed to deliver in February and plaintiff sought to recover damages as of February. Defendant contended that inasmuch as the contract was broken at the end of July the damages should be fixed as of that time and that since no new contract was entered into the measure of damages could not be altered by subsequent events. The court, at pp. 281 and 283, said: "I agree that the plaintiff did not make a binding contract at law, because he never contracted at all" (referring to the consent to extend time for delivery); "but I think that what he did operated so far

that it amounted to a postponement of the day at which he might go into the market, and at which the jury might calculate the measure of damages." . . . "Here there was no substitution of one contract for another. Here the inference which I think the jury might well draw as the result of the evidence is that the parties did no more than this: The plaintiff was willing to wait, at the request of the defendant, for the defendant's convenience, and he did wait a long time, till February; but if he had lost patience sooner, and refused to wait any longer, he would have had a right to bring his action at once for the breach in July. It is clearly a case of voluntary waiting, and not of alteration in the contract; and the length of time can make no difference." See also *Brown* v. *Sharkey*, 93 Iowa, 157; *Ralli* v. *Rockmore* (Ga.) 111 Fed. 874; *Consumers' Bread Co.* v. *Stafford County Flour Mills Co.* (Kan.) 239 Fed. 693; *Hickman* v. *Haynes*, L. R. 10 C. P. 598; *Schultz* v. *Glickstein*, 168 N. Y. Sup. 490; Sedgwick on Damages, 9th Ed. Vol. 2, § 737.

Exceptions 6 to 13, inclusive, and exceptions 25 and 28 are each overruled.

The 35th exception, which was to the refusal to grant a new trial, is also overruled.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment on the verdict.

*Frederick W. O'Connell, Swan, Keeney & Smith,* for plaintiff.

*McGovern & Slattery,* for defendant.