## MAYO v. AMERICAN MALTING CO.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1914.)

No. 1210.

1. CONTRACTS (§ 10*)—REQUISITES AND VALIDITY—MUTUALITY.

A provision, in a contract for the sale of malt to be shipped as ordered, that if not ordered as required by the contract, the seller might charge one cent a bushel per month during the continuance of the delay, and that if all the malt was not ordered within the contract period, the seller might cancel the contract for the unshipped balance, or continue to carry the malt at such stipulated price, did not destroy the mutuality of the contract, as the seller would by the general law have such a choice of modes of redress, but merely fixed in advance the damages for delayed performance.

[Ed. Note.—For. other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*

Mutuality in contract, see notes to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543; Oakland Motor Car Co. v. Indiana Automobile Co., 121 C. C. A. 362.]

2. SALES (§ 116*)—RESCISSION BY BUYER—BREACH OF CONTRACT BY SELLER.

Under a contract for the sale of malt, by which it was agreed that the seller would not quote prices on malt to other persons in the buyer's state, a sale of malt to another party in such state did not entitle the buyer to rescind, unless he was thereby prevented from selling the malt purchased by him at a satisfactory price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 290; Dec. Dig. § 116.*]

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Action by the American Malting Company against George D. Mayo, trading as the Mayo Milling Company. Judgment for plaintiff, and defendant brings error. Affirmed.

S. S. P. Patteson, of Richmond, Va., for plaintiff in error.

John A. Cutchins, of Richmond, Va., and Edwin Blumenstiel, of New York City (Cutchins & Cutchins, of Richmond, Va., on the brief), for defendant in error.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

---

ROSE, District Judge. [1] The parties will be designated as they were below. The malting company was there the plaintiff, Mr. Mayo the defendant. On October 26, 1911, the defendant agreed to buy 6,250 bushels of malt from the plaintiff. He was to pay $1.32 a bushel for it. The terms were sight draft, bill of lading attached. He was to order the malt shipped in approximately equal monthly installments prior to June 1, 1912. If he should not give shipping orders as required by the contract, the seller was authorized to charge him for storing and carrying a cent a bushel per month during the continuance of the delay. If he failed to order all the malt within the contract period, the seller was given the option of canceling the contract for the unshipped balance, or of continuing to carry the malt for him for such time as it deemed fit at the stipulated cent a bushel per month.

Defendant claims that this reservation of alternative remedies to the plaintiff in the event of the defendant's breach destroyed the mutuality of the contract. A seller would, by the general law, have such a choice of modes of redress. The contract merely fixes in advance the damages for delayed performance. This contention does not require further consideration.

[2] The defendant never ordered any of this malt. Subsequent to June 1, 1912, he several times asked the plaintiff to cancel the contract. It refused to do so. It told him that upon certain conditions it would carry the malt for him to December 31st without exacting the monthly compensation of a cent a bushel. He never accepted this offer, or bound himself to the conditions named. On the 28th of October, 1912, he notified the plaintiff that he would not take the malt. It caused the malt to be sold. The net proceeds of the sale were $4,866.64 less than the contract price. None of the facts thus far stated are in dispute. The defense rests on other grounds. The relations between the parties began in September, 1911. Defendant then wrote to plaintiff for its prices for distillers' malt. An agent of the plaintiff thereupon called upon the defendant. At the interview an understanding was reached that defendant would buy malt from the plaintiff, and that the latter would not quote prices on distillers' malt to other persons in Virginia. This understanding was never reduced to writing. Its precise terms, conditions, and durations do not appear to have ever been definitely settled. On the day on which this interview took place defendant ordered from plaintiff a car of malt. Subsequently and prior to November 23, 1911, other orders were given. One of these was that now sued upon. All of them were in writing. Except as to dates, qualities, quantities, and prices they were identical in terms. Plaintiff in the fall of the year was wont to contract for all the malt he expected to need in the next 9 or 10 months. Such seems to have been the common usage of the trade. Shipments in accordance with the directions given by him were made to him at different times between September 19, 1911, and February 22, 1912. He paid for all the malt he received. His payments footed up an aggregate of over $37,000. For some reason during the season of 1912, the Richmond distillers bought much less than the usual quantity of malt. The barley crop of 1912 was large and of high average quality. The price of malt fell rapidly.

In September, 1911, it brought f. o. b. Richmond $1.32 per bushel. Thirteen months later it could be had for 74 cents. Defendant himself testified that in the summer and fall of 1912 he held some thousands of bushels of malt. He had paid the preceding year's prices for it. There was a very small local demand. In the general markets of the country it was falling with great rapidity. He and a Richmond competitor of his, who was in like case, tried to protect themselves by agreeing not to sell under $1.35 a bushel. The jury was entitled to infer, if they wished, that the reason why he never agreed to the conditions upon which the plaintiff offered to extend the time of delivery was that he could not make up his mind to surrender the hope that he might escape in some way from taking the malt at all. While things were thus drifting along a car of distillers' malt sold by the plaintiff to the Adams Grain & Provision Company of Richmond arrived in that city. The defendant learned of the incident almost immediately. He at once, on the 23d of October, wrote to the plaintiff that he regarded this sale to one whom he described as a competitor as a breach of the contract with him, and told it that he would not take any of the malt. In the court below and here he contends that he had the right to take this position, and that it is a complete answer to plaintiff's demand.

At the trial plaintiff objected to the proof of the verbal understanding or agreement. It said that the evidence was offered in the attempt to add by parol a new term or condition to a written contract. It relied, not only on the general rules of law upon that subject, but upon an express provision of the contract sued on, to the effect that no verbal conditions or modification of it would be valid. The court allowed the evidence to go to the jury. The plaintiff contended that, even if there was a parol agreement, it was not operative beyond the latest date fixed by the written contracts for the shipment of the malt. It argued that the indulgence as to time of delivery given to the defendant at his request could not extend the life of the agreement not to sell to others. It pointed out that there was no consideration shown or even suggested to sustain a binding contract to extend, and no acceptance by defendant of plaintiff's conditional offer of extension. Again the court overruled the objection and upheld the contention of the defendant. The court told the jury that if they believed that on the 23d of October, 1912, the defendant could have sold the malt which the plaintiff was then holding for him at a price satisfactory to himself and at which he was holding it, and that he was prevented from so doing by reason of the shipment into his territory of malt at a price below that at which he was then holding it, they must find for the defendant. They were further instructed that if, on the other hand, they found that the shipment did not prevent the plaintiff from selling, but that his inability to do so was the result of a long-continued fall in the market price, or of the shutting down of business by his customers, or for any other cause over which plaintiff had no control, their verdict must be for the plaintiff. It is to this latter instruction, and to the refusal to tell the jury that the shipment in question in itself entitled the defendant to rescind, that he makes his most serious objection. It is not every breach of a term or provision of a contract which will justify its rescission by the other party. If the breach did

nim no hurt, it was immaterial. If the shipment in question forced down the price of defendant's malt, or kept him from selling it, he was injured by it. It could not have harmed him in any other way. Whether it did him that harm was squarely submitted to the jury. They decided against him. They did not give the plaintiff a verdict for the full amount to which from the evidence it would appear to have been entitled. The 1,500 bushels of malt were shipped to the Adams Grain & Provision Company. They paid 74 cents a bushel for it, or $1,110 in all. Defendant points out that the verdict for the plaintiff was for $3,756.64, and that this is precisely $1,110 less than the sum claimed by it. Such appears to be the fact. We do not see that the defendant has any reason to complain of the action of either court or jury.

Affirmed.