### BOEHMER COAL CO. v. BURTON COAL CO.

(Circuit Court of Appeals, Eighth Circuit. November 22, 1924.)

No. 6596.

**1. Contracts ⊚⟹153—Construed as valid and binding, if possible.**

Courts strive to give meaning to each part of contract, and will, if possible, construe contract as valid and binding instead of void and unenforceable.

**2. Contracts ⊚⟹153—Parties assumed to intend contract to be binding.**

It is to be assumed that parties entering contract intend to make it binding and enforceable.

**3. Contracts ⊚⟹10(4)—Provision against cancellation of coal contracts after shipment held not to make contracts void for want of mutuality.**

Provision of coal contracts that order was not subject to cancellation after shipment was made, in view of partial performance and of surrounding circumstances, held not to mean that any portion of order not shipped was subject to cancellation by buyer, which would make contract void for want of mutuality, but to be disregarded as not affecting expressed obligation or as mere statement of rule of law.

**4. Sales ⊚⟹54—Contract on seller's printed form construed most strongly against seller.**

Contract for sale of coal on seller's regular printed form should be construed most strongly against seller.

**5. Sales ⊚⟹161—Seller agreeing to furnish cars bound to make reasonable effort to carry out agreement.**

Seller agreeing to furnish cars for transporting goods was bound to make every reasonable effort to carry out agreement.

**6. Sales ⊚⟹161—Seller's mere demand on railroad's local agent held not reasonable diligence to carry out duty of furnishing cars.**

Where seller assumed duty of furnishing cars for transporting coal, mere demand for cars on railroad's local agent fell far short of exercising reasonable diligence to carry out agreement.

**7. Sales ⊚⟹83—Under Illinois law, duty of seller of coal to furnish cars.**

Under the law of Illinois, it is the duty of seller of coal for shipment from mine to furnish cars for transportation, especially where parties themselves so construed the contract.

**8. Sales ⊚⟹172—Seller not relieved from obligation to deliver because of inability to secure cars, provision as to place of delivery being for buyer's benefit.**

Under contract for sale of coal f. o. b. mine, wherein seller agreed to furnish cars, seller was not relieved from its obligation because of difficulty of securing cars for shipment to named consignee, where it would have been subjected to no additional burden or expense by complying with buyer's offer to change destination and consignee, contract provision as to destination being for buyer's benefit, which he could waive without relieving seller.

**9. Estoppel ⊚⟹63—After litigation begun, party cannot change his ground by giving another reason for his conduct.**

Where party gives reason for his conduct respecting matter in controversy, he cannot, after litigation has begun, change his ground and put his conduct on another consideration.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action by the Burton Coal Company against the Boehmer Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Rhodes E. Cave, of St. Louis, Mo. (Bryan, Williams & Cave, of St. Louis, Mo., on the brief), for plaintiff in error.

Grover C. Niemeyer, of Chicago, Ill. (Maclay Hoyne, of Chicago, Ill., Ropiequet & Ropiequet, of East St. Louis, Ill., and Spencer & Donnell, of St. Louis, Mo., on the brief), for defendant in error.

Before STONE and KENYON, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge. The defendant in error, plaintiff in the court below, instituted suit against the plaintiff in error, defendant there, for damages growing out of the alleged breach of two contracts for the purchase and sale of coal. Under these contracts the plaintiff in error was the seller, and defendant in error, the purchaser. After issue was joined, the case was tried to the court without the intervention of a jury, and the trial court found for the plaintiff, the purchaser, and assessed its damages in excess of $19,000, including interest, to which findings and judgment exceptions were taken and the case brought here upon proceedings in error.

It will not be necessary to discuss the pleadings, as an outline of the facts will disclose the legal propositions involved.

The seller received two oral orders for

100 cars of coal each, from the purchaser, and accepted the orders by two written acceptances almost identical in form; the one calling for lump coal and the other for egg coal.

The legal questions involved very largely grow out of the interpretation of these contracts, and as they are practically identical except as to the kind of coal specified, one only of them will be used for consideration here, being in form as follows:

"Acceptance of Order.

"Boehmer Coal Co., Miners and Shippers,

"Anthracite, Bituminous, Foundry, Furnace, and Smithing Coal and Gas Coke,

"Sixth Floor Wright Building, N. W. Corner 8th and Pine Streets.

"Long distance phone: Bell, Main 2860.
"Wholesale Department.

"St. Louis, April 19, 1920.
"Order No. 2196.
"Wickham & Burton Coal Co., Chicago, Ill.: We acknowledge receipt of your order as follows:

| No. Cars. | Size. | Kind of Coal. | Price. | F. O. B. | Rate. |
|---|---|---|---|---|---|
| 100 | 2″ | Shk. Scrn. Edwardsville Lump. | $2.90 | Mine | # |

"To be shipped to O. C. Wright, Supt. Motive Power, Pennsylvania System.

"At Fort Wayne, Ind.

"Via Wabash R. R.

"When to ship: As fast as possible, at rate of 1 to 5 cars per day.

"Postal notices to Chicago, Ill.

"Invoices to Chicago, Ill.

"Remarks: Verbal Mr. Lemon to me this p. m.

"The above prices are per net ton of 2,000 pounds.

"If any error has been made in entering this order, as above stated, please advise by return mail. The order has been accepted and entered subject to the following conditions of sales: This sale is based only on the present freight rates. Bill of lading to be proof of delivery as regards both time and quantity. Weights to govern shall be either mine track scale or railroad track scale as ascertained at original point of weighing. We make delivered prices as an accommodation to our customers, but do not bind ourselves thereby to accept destination weights. The buyer shall look to the carrier for any loss or damage in transit. Terms of sale cash. All contracts not paid by 10th of month following shipment, subject to sight draft without notice. If at any time in our judgment the credit of the purchaser shall become impaired, right to require payment in advance is reserved before making further shipments.

"This company shall not be liable for contingencies of transportation or mining.

"Orders accepted subject to our ability to get the proper equipment to go the route.

"This order is not subject to cancellation after shipment has been made. If the conditions upon which we accept your order are not satisfactory, please so advise us at once and we will cancel order.

"We thank you and hope to receive your future orders.

"Boehmer Coal Company,
"By Will H. Boehmer, Pres. M."

The subsequent facts material to the discussion of the issues appear to be that the contracts were turned over to the Edwardsville Coal Company by the Boehmer Company, for fulfillment of the orders. Under the lump coal contract, some 30 cars were shipped, but none under the egg coal contract.

The difficulty between the parties appears to have arisen out of the refusal of the Wabash Railroad, designated by the contracts as the carrier for the delivery of the coal, to furnish further cars; that railroad taking the position that inasmuch as the coal was for the use and benefit of the Pennsylvania Railroad, cars of that system should be furnished for the fulfillment of the contracts. Demands were made upon the local agent of the Wabash Railroad at intervals for cars to make the shipments called for by the contracts, by the Edwardsville Coal Company, and subsequently the Boehmer Company advised the Burton Company of the difficulty arising in securing cars and made demand upon the Burton Company to secure the necessary cars. The Burton Company evidently took the position that it was the duty of the Boehmer Company to provide cars, but in any event no further cars of coal were shipped under the contracts.

During the negotiations between the parties, the Burton Company, the purchaser, proposed to have the remaining shipments diverted to other points and other consignees for the purpose of assisting the Boehmer Company in fulfilling its contract; but the Boehmer Company refused to accede to this arrangement, and in course of time this lawsuit originated.

[1-3] The first point for consideration is the contention of the plaintiff in error that the contracts are void for lack of mutuality. This contention arises out of that clause in the contracts which reads as follows: "This order is not subject to cancellation after shipment has been made." Counsel for plaintiff in error contend that the proper interpretation of the contracts in the light of this clause is that any portion of the order not shipped was subject to cancellation by the purchaser, thereby becoming unenforceable and void for want of mutuality.

While it is undoubtedly true that courts will strive to give meaning to each constituent part of a contract, it is likewise true that the courts will strive to give that construction which will make a contract valid and binding instead of a construction making it void or unenforceable. 13 C. J. 539; American Sugar Refining Co. v. Newnan Grocery Co. (C. C. A.) 284 F. 835; Hobbs v. McLean, 117 U. S. 567, 6 S. Ct. 870, 29 L. Ed. 940, and the authorities there cited.

It is also to be assumed that parties entering into a contract intend to make it binding and enforceable. American Sugar Refining Co. v. Newnan Grocery Co., supra. It is therefore clearly the duty of the court to make an honest attempt to sustain the validity of the contracts under this well-recognized rule of law, and particularly in view of the facts in this case, that the parties undoubtedly considered themselves bound, at least until controversies arose, with the additional persuading circumstance here that the contracts had become partially executed.

As to the interpretation of the above-quoted clause, in order to sustain the contention of plaintiff in error it would be necessary to construe the contracts as affirmatively asserting that they were subject to cancellation before shipment. It appears that this would be a forced and strained construction in the light of the circumstances surrounding these contracts and the action of the parties in carrying them into effect, because it would be reading into the contracts a provision in the first instance which is clearly not there, and in the second place it would mean a construction which would render the contract void and unenforceable in violation of the rule of construction by the courts.

[4] It may either be said that this is a vague and ambiguous clause which can easily be disregarded as in no way affecting the clearly expressed binding obligations of the parties to the contracts (13 C. J. 535), or, as frequently occurs in contracts, it may be regarded as the mere statement of a rule of law, the principle of which would govern the rights of the parties whether inserted in the contract or not. The trial court took the view that it might fairly be regarded as the statement of a legal truism. This principle is supported by authority. Hogue-Kellogg Co. v. Baker, 47 Cal. App. 247, 190 P. 493; Mayo v. American Malting Co., 211 F. 945, 128 C. C. A. 443. Furthermore, the contracts were upon regular printed forms of the Boehmer Company and should therefore be construed most strongly against it. Mt. Vernon Refrigerating Co. v. Wolf Co., 188 F. 164, 110 C. C. A. 200.

[5, 6] It having been determined that the contracts in this case are valid and enforceable, the point as to why they were not carried out remains to be considered. One of the defenses of the Boehmer Company was that it was unable to secure equipment for shipping the coal although making every effort to secure such equipment and that it had called upon the purchaser, the Burton Company, to furnish such equipment which it had neglected and refused to do. The evidence shows that the Boehmer Company first assumed the duty of furnishing equipment to the extent at least that it made requisition and demand upon the local agent of the Wabash for cars through the Edwardsville Coal Company, the Boehmer Company's agent, but excepting this simple effort there is no evidence that the Boehmer Company pursued the matter further but apparently relied upon its demand upon the Burton Company to supply the cars. If it were the duty of the Boehmer Company, as the seller, to furnish cars, it is very clear that it fell far short of exercising reasonable diligence in discharging that duty. It therefore becomes pertinent here and one of the decisive features of the case to determine upon which party rested the legal duty of furnishing the equipment.

The contracts contain this provision: "Orders accepted subject to our ability to get the proper equipment to go the route." Here the Boehmer Company has by a self-prepared contract assumed the obligation of providing the equipment. It is incumbent upon the party on whom the responsibility rests to make every reasonable effort to carry out the terms of the contract. 35 Cyc. 247; Jessup & Moore Paper Co. v. Piper (C. C.) 133 F. 108; Consolidation Coal Co. v. Peninsular Portland C. Co. (C. C. A.) 272 F. 625.

[7] Another cogent reason for holding that it was the duty of the Boehmer Com-

pany to supply the cars is the fact that the place of performance of the contracts was the Edwardsville mines, in the state of Illinois. The courts of that state have determined that under contracts similar to those in the case at bar, particularly where it becomes apparent that such a construction has been placed upon the contracts by the parties themselves, it is the duty of the seller to furnish the cars. Consolidated Coal Co. v. Schneider, 163 Ill. 393, 45 N. E. 126; Harman v. Washington Fuel Co., 228 Ill. 298, 81 N. E. 1017; Consolidated Coal Co. v. Jones & Adams Mnfg. Co., 232 Ill. 326, 83 N. E. 851.

[8] The evidence in the case shows that when the difficulty in securing cars for shipment to the Pennsylvania System became apparent, the Burton Company offered to change the destination and consignee as set forth in the contracts for the purpose of securing their fulfillment, to which suggestion the Boehmer Company failed to respond. In this respect the Boehmer Company maintains that the routing and destination were material parts of the agreement and not subject to change at the will of either party. Under the circumstances in this case, such a contention of the Boehmer Company cannot be sustained. The contracts fix the price of the coal f. o. b. the mine, which was at Edwardsville, Ill. The expense, as well as the risk of the transportation to the point of delivery, therefore rested upon the Burton Company, and it would seem to make no difference to the Boehmer Company as to the destination of the shipment. Such a provision in the contract is little more than a direction to the seller, or at best is purely for the benefit of the purchaser and may be waived by him without disturbing or affecting any of the rights of the seller under the contracts. The determining point upon such a question is whether or not such a change in destination of the shipment would impose additional expense, undue delay, or additional burden upon the seller, and if it be determined that it would not, the stipulation in the contract should be held to be for the benefit of the purchaser, which he could waive at will without releasing the seller from his obligations. Meyer v. Sullivan, 40 Cal. App. 723, 181 P. 847; Douglas Fir Exploitation & Export Co. v. Comyn (C. C. A.) 279 F. 203; Matthew Smith T. C. & G. Co. v. Lamborn Co. (D. C.) 276 F. 325.

Under the circumstances in the case at bar, it is manifest that the change in point of destination and consignee would have added nothing to the burden of the Boeh-

mer Company under the contracts. The fact that after the contracts were entered into there was a sharp rise in the price of coal is in this connection significant of what might have been the true reason why the contracts were not carried out.

[9] The only remaining point in the case is that raised by the Burton Company that the Boehmer Company was estopped from asserting the invalidity of the contracts in court for the reason that up until the time suit was brought the only contention of the Boehmer Company in regard to its failure to fulfill the contracts was either its inability to secure cars or the failure of the Burton Company to furnish them, and that the Boehmer Company could not after having taken one position, when afterward brought into court, assert another and different reason for not having fulfilled its contracts, but should be held by its conduct to have waived other claims. The general rule upon this question laid down by the courts finds its best expression in the case of Railway Co. v. McCarthy, 96 U. S. 258, where the court at page 267 (24 L. Ed. 693), says:

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law."

It is earnestly urged, however, in behalf of the Boehmer Company, that this rule does not apply in a case where a subsequent contention of the party, when sued, challenges the validity of the contract itself, and that the rule is that such a contention may be asserted at any time without respect to what the former claims of the litigant might have been.

This contention seems to find support in the case of Interstate Iron & S. Co. v. Northwestern Bridge Co. (C. C. A.) 278 F. 50. On the other hand, the contention of the Burton Company, that there is an estoppel even where the subsequent claim relates to the validity of the contract, is at least asserted as a principle of law in the following cases: Luckenbach Co. v. Grace (C. C. A.) 267 F. 676, and Grimwood v. Steamship Line (C. C. A.) 273 F. 166.

In the very recent case of Second National Bank of Allegheny v. Sash Corporation (C. C. A.) 299 F. 371, decided by the Circuit Court of Appeals for the Third Circuit, it is asserted that the rule announced in the McCarthy Case, supra, is based

upon the principle of equitable estoppel and that the facts of each case must be examined to ascertain whether or not the rule should be applied. If it be found that the party asserting the new contention has not by and on account of his original claim "misled his adversary or induced him to alter his position to his prejudice," and where the facts themselves do not raise an estoppel, then the rule should not be applied.

In the view which the court has taken, that the contracts were valid and binding in the case at bar and that the failure to fulfill them rested upon the Boehmer Company, it appears that this is a point, the determination of which is not necessary to a decision of the case, but it has been deemed advisable to bring the authorities together in discussing all the legal questions presented. In addition to this, it appears that the defense of estoppel was not pleaded by the Burton Company in its reply, and it is therefore problematical whether or not the question is squarely before the court.

The judgment of the trial court will be and is affirmed.

STONE, Circuit Judge. I concur in the result; also in the opinion, except as to that portion holding that the destination requirement in the contract was for the exclusive benefit of the purchaser (Burton Company) and could be waived and changed by it.