## EDWARDSVILLE COAL CO. v. CROWN COAL & COKE CO.*

Circuit Court of Appeals, Eighth Circuit.
July 28, 1927.

No. 7770.

**1. Sales ⊂⇒85(2)—Seller of coal, subject to ability to procure cars, held excused for nondelivery if, after every reasonable effort, it was unable to obtain required cars.**

Where plaintiff ordered from defendant 100 cars of coal, to be shipped to a customer by the Wabash Railroad, which order was accepted subject to the ability of defendant to procure cars from the railroad, *held*, in an action for breach of the contract, that it was a defense that defendant, after every reasonable effort, was unable to procure more than 30 cars used.

**2. Sales ⊂⇒182(1)—Whether seller made every reasonable effort to procure cars to fill order for sale of coal held for jury.**

In action for breach of contract to comply with order for 100 cars of coal, to be shipped to a customer of plaintiff, which defendant accepted subject to its ability to procure cars from the railroad, whether defendant made every reasonable effort to procure cars *held* question for jury.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Action at law by the Crown Coal & Coke Company against the Edwardsville Coal Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Douglas W. Robert, of St. Louis, Mo., for plaintiff in error.

Rhodes E. Cave, of St. Louis, Mo. (Bryan, Williams & Cave, of St. Louis, Mo., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

JOHN B. SANBORN, District Judge. The Crown Coal & Coke Company brought suit against the Edwardsville Coal Company for damages for breach of contract. The plaintiff claimed that on April 19, 1920, it made a contract with the defendant, by which the defendant sold and agreed to deliver 100 cars of Edwardsville coal, two-inch, shaker screen lump, at $2.75 per ton f. o. b. mine, Edwardsville, Ill., and 100 cars of Edwardsville lump or egg coal, at $2.75 per

ton f. o. b. the same place, and agreed to ship the coal as fast as possible at the rate of one to five cars per day to O. C. Wright, superintendent of motive power, Pennsylvania System, Ft. Wayne, Ind., via Wabash Railroad; that only 30 cars had been shipped. The defendant denied making any contract to sell or ship 200 cars of coal, as claimed by the plaintiff, but asserted that on April 19, 1920, the plaintiff ordered 100 cars of Edwardsville shaker screened coal at $2.75 per ton f. o. b. mine at Edwardsville, to be shipped at the rate of one to five cars per day, via the Wabash, to Mr. Wright, superintendent, Pennsylvania System, at Ft. Wayne, Ind. The defendant also asserted that, at the time the order was given, it was accepted, subject to the defendant's ability to secure cars from the Wabash, and that the Wabash had refused to furnish more than 30 cars, which had been shipped.

Upon the trial, it was established that only one order for coal was given and accepted by the defendant. That was an order for 100 cars of Edwardsville shaker screened lump coal at $2.75 per ton, f. o. b. mine, and was accepted on condition that the defendant could procure cars from the Wabash. The evidence also showed that 30 cars of coal were shipped; that the defendant demanded cars from the agent of the Wabash at Edwardsville; that cars were refused; that the agent wired his superintendent relative to cars, but received instructions not to furnish cars for shipment of coal to the Pennsylvania System. It was shown that the Wabash indicated its willingness to transport the coal to the Pennsylvania, if that road would furnish the equipment; that the defendant notified the plaintiff that it could not procure cars from the Wabash, and suggested that the plaintiff attempt to procure Pennsylvania cars. No order was ever given by the plaintiff to divert cars to any other point or consignee, although the evidence indicates that the Burton Coal Company, which had contracted for this coal from the plaintiff, had directed its diversion to the Commonwealth Edison Company at Chicago.

It therefore appeared that the contract was for 100 cars of coal to be shipped to the Pennsylvania System at Ft. Wayne, Ind., and was subject to the ability of the defendant to procure cars from the Wabash; that demands had been made for cars upon the agent of the Wabash at Edwardsville, but that only 30 cars had been furnished, and more had been refused by him.

At the close of the testimony, the plaintiff was permitted to amend its petition, so as to allege a contract for 100 cars of coal, instead of 200 cars. In other words, it was permitted to conform its pleadings to the proof. To this amendment, the defendant made objection, on the ground that it set up an entirely new contract and cause of action. The defendant then asked the court to direct a verdict in its favor, which motion was denied. It further requested an instruction to the effect that, if the jury found that the contract was conditioned on the ability of the defendant to procure cars from the Wabash, and that the Wabash refused cars for further shipments, the defendant was excused for its failure to deliver the 70 cars in question, and its verdict must be for the defendant. This instruction was refused.

The court submitted to the jury only the question of the plaintiff's damages, and, in effect, directed a verdict for the plaintiff for the difference between the contract price and the market value of the undelivered coal. The defendant took proper objections and exceptions to the action of the court in so doing.

While counsel for the defendant argues with great earnestness the impropriety of allowing the amendment to the petition, we fail to see how the defendant was in any way prejudiced. It amounted to nothing more than the concession on the part of the plaintiff that the contract was as the defendant claimed it to be; that is, for 100 cars of coal, instead of 200 cars.

Apparently counsel for the plaintiff and the court were under the impression that the case was controlled by the decision in Boehmer Coal Co. v. Burton Coal Co. (C. C. A.) 2 F.(2d) 526, which involved a suit by the Burton Coal Company against the Boehmer Coal Company (now the Crown Coal & Coke Company), which had contracted to sell this coal to the Burton Company. It will be noted, however, that in that case, orders were accepted by the Boehmer Company "subject to our ability to get the proper equipment to go the route." In the decision, this court said (page 528):

"The evidence shows that the Boehmer Company first assumed the duty of furnishing equipment to the extent at least that it made requisition and demand upon the local agent of the Wabash for cars through the Edwardsville Coal Company, the Boehmer Company's agent; but, excepting this simple effort, there is no evidence that the Boehmer Company pursued the matter further, but apparently relied upon its demand upon the Burton Company to supply the cars."

In that case, then, it was shown that the Boehmer Coal Company did nothing directly

to procure equipment, and that it demanded that the Burton Coal Company, its vendee, procure equipment. In this case it is shown that the defendant directly requested cars from the agent of the Wabash, who wired his superintendent and was instructed to refuse them for shipment of coal to the Pennsylvania. Furthermore, in the case referred to, it was shown that 'the Burton Coal Company had directed the diversion of the shipments to other consignees, for shipments to whom undoubtedly cars would have been furnished by the Wabash, and it was held that the Boehmer Coal Company was obligated to comply with such orders, but had failed to do so. No such situation existed in this case.

[1] It was the duty of the Edwardsville Company, the defendant in this case, to make every reasonable effort to carry out the terms of the contract. Boehmer Coal Co. v. Burton Coal Co., supra; Jessup & Moore Paper Co. v. Piper (C. C.) 133 F. 108; Consolidation Coal Co. v. Peninsular Portland Cement Co. (C. C. A.) 272 F. 625. It was therefore required to make such efforts to procure cars from the Wabash, for the purpose of carrying out its contract, as an honest and diligent man, sensible of his obligations and desirous of fulfilling them, would have used.

[2] It has been said that, in view of the fact that there was no substantial dispute in the evidence, the trial court should have directed a verdict either one way or the other. We think that, in view of all the circumstances disclosed by the evidence, reasonable minds might well have differed as to whether the defendant made or failed to make every reasonable effort to procure cars, and that the question was therefore not a question of law for the court, but one of fact for the jury, and should have been submitted to it for determination. See Consolidation Coal Co. v. Peninsular Portland Cement Co., supra, 631.

It is therefore ordered that the judgment be reversed, and the case remanded, with directions to grant a new trial.